STATE OF NEBRASKA EX REL. COUNSEL FOR DISCIPLINE
OF THE NEBRASKA SUPREME COURT, RELATOR, V.
DEBRA M. SWANSON, RESPONDENT.
675 N.W.2d 674

Filed March 12, 2004.    No. S-02-979.

Kent L. Frobish, Assistant Counsel for Discipline, for relator.

Robert B. Creager, of Anderson, Creager & Wittstruck, P.C., for respondent.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

PER CURIAM.

Debra M. Swanson was formally charged with violations of the Code of Professional Responsibility and her oath of office as an attorney. After a hearing, the referee filed a report and recommended that Swanson be disbarred from the practice of law. Swanson filed exceptions to the referee's report and recommendation.

## BACKGROUND

Swanson was admitted to the practice of law in the State of Nebraska on April 12, 1994, and at all times relevant to these proceedings was engaged in a solo private practice in York, Nebraska.

On February 12, 2003, we sustained a motion by the Counsel for Discipline of the Nebraska Supreme Court requesting leave to file amended formal charges, and pursuant thereto, the Counsel for Discipline filed seven counts against Swanson.

Count I alleged that in February 2000, Swanson was paid $500 to represent Patsy Van Ness in a dissolution of marriage action. In early March, Van Ness withdrew funds from bank accounts she held jointly with her husband and gave $2,290 in cash to Swanson

for safekeeping. Swanson did not deposit these funds into a trust account, nor did she keep an accounting of the funds as they were distributed to Van Ness or on her behalf. Van Ness also removed approximately $3,850 in bonds from a safe deposit box and gave this and other personal property to Swanson for safekeeping.

When Van Ness moved out of the family home, she took most of the furnishings. Van Ness' complaint alleged that Swanson took some of the furniture to apply toward attorney fees but did not provide an accounting to Van Ness for the value of the furniture.

Van Ness terminated Swanson's services in June 2000 and requested that Swanson return the remaining funds which she had been holding for Van Ness. Van Ness also requested that Swanson return attorney fees that had not yet been earned.

The Counsel for Discipline alleged that the above acts and omissions constituted a violation of Swanson's oath of office as an attorney, see Neb. Rev. Stat. § 7-104 (Reissue 1997), and that such actions were in violation of, among others, the following provisions of the Code of Professional Responsibility:

DR 1-102 Misconduct.

(A) A lawyer shall not:

(1) Violate a Disciplinary Rule.

. . . .

DR 9-102 Preserving Identity of Funds and Property of a Client.

(A) All funds of clients paid to a lawyer or law firm shall be deposited in one or more identifiable bank or savings and loan association accounts maintained in the state in which the law office is situated, and no funds belonging to the lawyer or law firm shall be deposited therein except as follows:

. . . .

(B) A lawyer shall:

. . . .

(3) Maintain complete records of all funds, securities, and other properties of a client coming into the possession of the lawyer and render appropriate accounts to the client regarding them.

As to count I, the referee found that during her representation of Van Ness, Swanson received money for safekeeping and did

not deposit the money in an identifiable bank or savings and loan association account. When she distributed the money as Van Ness requested, Swanson did not keep a record of the disbursements. The referee found that Swanson had returned all of the property given to her by Van Ness for safekeeping.

Count II charged that on November 3, 2000, Rick Siemsen contacted Swanson about representing him in a civil matter. The parties met at Swanson's home office on November 4, at which time Swanson explained that she billed her time at $100 per hour. Siemsen gave her $500 in cash as an advance fee payment and stated he would contact her in a few days. Swanson did not place the money in her trust account.

It was alleged in count II that Siemsen became dissatisfied with the progress of his case and made an appointment to pick up certain documents from Swanson in order to retain a different attorney. Swanson did not keep this appointment. Swanson refused to return Siemsen's documents to him but agreed to forward them to his new attorney. Swanson also refused to return any portion of the $500, claiming that she had earned the entire amount. Count II further alleged that Swanson created a billing statement after Siemsen's grievance was filed with the Counsel for Discipline. It was also alleged that in her billing statement, Swanson falsely claimed to have spent 3 hours doing research at the University of Nebraska-Lincoln law library and also billed Siemsen 1.75 hours for her travel time to the library. When Swanson's deposition was taken, she could not identify any research she had done concerning Siemsen's case, nor could she produce photocopies of cases she had made or notes she had taken while at the library.

On May 6, 2002, Siemsen sued Swanson in small claims court. A judgment was subsequently entered against Swanson in the amount of $500 plus costs. Swanson had not paid any portion of the judgment against her as of January 2003.

The Counsel for Discipline alleged that the above acts and omissions constituted a violation of Swanson's oath of office as an attorney and were in violation of, among others, the following provisions of the Code of Professional Responsibility:

DR 1-102 Misconduct.

(A) A lawyer shall not:

(1) Violate a Disciplinary Rule.

. . . .

(5) Engage in conduct that is prejudicial to the administration of justice. . . .

(6) Engage in any other conduct that adversely reflects on his or her fitness to practice law.

. . . .

DR 2-110 Withdrawal from Employment.

(A) In general.

. . . .

(3) A lawyer who withdraws from employment shall refund promptly any part of a fee paid in advance that has not been earned.

. . . .

DR 9-102 Preserving Identity of Funds and Property of a Client.

(A) All funds of clients paid to a lawyer or law firm shall be deposited in one or more identifiable bank or savings and loan association accounts maintained in the state in which the law office is situated, and no funds belonging to the lawyer or law firm shall be deposited therein except as follows . . . .

At the hearing before the referee, Swanson claimed that the $500 was a nonrefundable retainer and that she expected to be paid for time over 5 hours. Siemsen stated that he had negotiated a flat fee of $500 to file the lawsuit. The referee found by clear and convincing evidence that the arrangement was a flat fee of $500 to file the lawsuit. The referee found that Siemsen had called Swanson and had terminated the relationship, complaining that Swanson had not taken any action. When Siemsen requested to pick up his documents, Swanson refused to give them directly to him and would give the documents only to another attorney.

The referee also found that Swanson had not completed any work on Siemsen's behalf and that Swanson's claimed billing statement was not a legitimate, contemporaneously generated, or accurate account of her efforts on Siemsen's behalf. The referee found that Swanson had lied to him and to others when she said she had completed work and had sent a bill to Siemsen. The referee found that Swanson had not returned any part of Siemsen's fee and had not paid the $500 judgment.

Count III alleged that in July 1999, Swanson represented a client in a dissolution of marriage action. At some time late in 1999 or early in 2000, Swanson began a sexual relationship with the client while she was still representing him. The Counsel for Discipline alleged that such conduct constituted a violation of Swanson's oath of office as an attorney and violated, among others, the following provisions of the Code of Professional Responsibility:

DR 1-102 Misconduct.

(A) A lawyer shall not:

(1) Violate a Disciplinary Rule.

. . . .

DR 7-101 Representing a Client Zealously.

(A) A lawyer shall not intentionally:

. . . .

(3) Prejudice or damage his or her client during the course of the professional relationship, except as required under DR 7-102(B).

The referee found by clear and convincing evidence that Swanson had engaged in an improper sexual relationship with a client during a divorce case which involved a custody dispute over the minor children of the parties.

As to count IV, the referee found that there was no clear and convincing evidence as to the facts and circumstances involved. Counts V and VI were dismissed and are not at issue.

Count VII alleged that on or about April 7, 1998, Nyla Anderson retained Swanson to represent her in a dissolution of marriage action. Anderson paid Swanson an advance fee of $9,865. In July, Swanson was discharged by Anderson, who obtained another attorney. The new attorney wrote Swanson, asking for an accounting of her time while representing Anderson and for a refund of any unearned portion of the advance fee. Swanson claimed no refund was due and asserted that Anderson owed Swanson an additional $14,000 for services rendered.

Anderson sued Swanson to recover the advance fee paid to her, and Swanson cross-petitioned, alleging that Anderson owed her over $14,000. Swanson was deposed but refused to answer any questions by Anderson's attorney. Swanson was ultimately sanctioned by the York County District Court in the amount of

$399.80 and ordered to answer the questions. A default judgment was later entered against Swanson in the amount of $9,365 for the advance fee paid to Swanson but not earned. Swanson has not paid the sanction or the judgment against her as of May 2003.

The Counsel for Discipline alleged that the foregoing acts and omissions constituted a violation of Swanson's oath of office as an attorney and were in violation of, among others, the following provisions of the Code of Professional Responsibility:

DR 1-102 Misconduct.

(A) A lawyer shall not:

(1) Violate a Disciplinary Rule.

. . . .

(5) Engage in conduct that is prejudicial to the administration of justice. . . .

(6) Engage in any other conduct that adversely reflects on his or her fitness to practice law.

. . . .

DR 9-102 Preserving Identity of Funds and Property of a Client.

. . . .

(B) A lawyer shall:

. . . .

(4) Promptly pay or deliver to the client as requested by a client the funds, securities, or other properties in the possession of the lawyer which the client is entitled to receive.

The referee found that in April 1998, Swanson deposited Anderson's payment of $9,865 into a trust account which immediately before this deposit contained $5.24. On the same day, Swanson transferred $3,200 out of the account, which she claimed was for time spent on Anderson's behalf in April. In May, Swanson transferred $1,500 from her trust account to her business account and from there transferred the $1,500 but did not remember where or to whom. In May 1998, she transferred $2,560 out of her trust account into her business account. When Swanson received a letter from Anderson's new attorney advising that he was taking over Anderson's representation and asking for a refund of the advance, Swanson knew that there was a dispute regarding the advance fee, including the balance she still had in her trust account.

Swanson received a second letter from the office of Anderson's new attorney demanding an accounting of the advance fee. Swanson testified that prior to that date, she had provided Anderson with a written statement of fees charged and that she had maintained a copy in the computer. Swanson claimed that she sent a letter to Anderson's attorney on September 16, 1998, and enclosed a purported earlier letter to him dated August 13, 1998, which in turn enclosed a "statement" to Anderson.

The referee found that Swanson's September 16, 1998, letter was intended to create the appearance that Swanson had previously sent a letter with an enclosed statement to Anderson's attorney on August 13. The referee also found the evidence was undisputed that Swanson had removed money from the trust account which belonged to Anderson and that Swanson's purported bill for expended professional time on Anderson's behalf in the amount of $23,865 was not credible.

The referee found that Swanson's billing statement was entirely lacking as a credible accounting of her time spent on behalf of Anderson if, indeed, she spent any time at all. The referee concluded that the billing statement sent by Swanson was an after-the-fact composition in an attempt to justify her retention of the advance fee. The referee found that Swanson had lied about the time she spent representing Anderson and that as a consequence of Swanson's misrepresentations and as a consequence of her failure to keep accurate records, Swanson engaged in conduct that was prejudicial to the administration of justice, in violation of Canon 1, DR 1-102(A)(5), and that Swanson had engaged in conduct that adversely affected her fitness to practice law, in violation of DR 1-102(A)(6).

Anderson sued Swanson, and on January 30, 2002, a default judgment was entered against Swanson in the amount of $9,365. The referee found that Swanson had violated Canon 9, DR 9-102(4), by not refunding Anderson the advance fee even though she was clearly entitled to it by virtue of a court judgment.

The referee also found that Swanson engaged in conduct prejudicial to the administration of justice when she refused without justification to answer questions at her deposition. She was subsequently sanctioned for her behavior, and she failed or refused to pay the court-ordered sanction. As a consequence of

all the foregoing, the referee found that Swanson violated DR 1-102(A)(1) and her oath of office as an attorney.

In his report, the referee concluded with regard to count I that Swanson's offenses were relatively benign and that they did not evidence an effort to conceal or to cheat any individual and that it appeared no money or property was lost. However, the referee found that Swanson's attitude was noteworthy in that she did not seem to appreciate the need for care in the handling of client property. The referee concluded that these violations did not in themselves cast serious doubt on Swanson's fitness to practice law but were part of a "larger mosaic which forms a darker picture."

The referee concluded as to count II that Swanson's conduct involved lies, deception, and ruses in order to keep money to which she was not entitled. Swanson's attitude was troubling to the referee in that she did not recognize that her behavior was improper. The referee found that Swanson had made earnest and involved efforts to deceive in hopes of keeping her client's money and her license to practice law.

The referee noted that count III was the one offense to which Swanson had admitted. He concluded as to count III that it did not appear that anyone was significantly hurt in the legal sense and that Swanson appeared to be appropriately contrite about this behavior, as compared to her attitude toward the other charges against her.

As to count VII, the referee concluded that Swanson's offenses were more serious. Taken together with her other offenses, the referee believed that they completed a "dark mosaic of a woman bereft of the practical and moral tools to practice the business of a profession based on good order, honor and integrity."

The referee determined that Swanson had displayed an indifference to the disciplinary process and to the administration of justice which reflected a disregard for the plight of her unhappy clients, her license, and her reputation. In summary, the referee concluded that Swanson lied to him about the work she did for Siemsen and for Anderson and that she used falsified billing statements to shore up her stories. The referee stated that "[a] lawyer who would engage [in] such an elaborate bodyguard of lies is one acting deliberately and with a specific intention to deceive." Swanson did not demonstrate to the referee that probation or

suspension would be effective in punishing and correcting her behavior. The referee concluded that Swanson had lied to anyone who would listen, had created fictitious documents, and had taken clients' money and refused to give it back, even though she had not earned it. The referee found that Swanson exhibited a disturbing indifference when confronted with allegations and accusations which would have been of great concern to other lawyers had they been confronted with such allegations.

Finally, the referee concluded that Swanson had not demonstrated any mitigating circumstances; had not demonstrated a sincere regret for her behavior, with the exception of her sexual relationship with a client; and had shown disrespect for her clients and the legal system. Given the nature of Swanson's offenses, the need to deter others from committing similar offenses, and Swanson's poor attitude, the referee recommended that Swanson be disbarred.

## EXCEPTIONS

Swanson has filed exceptions to the referee's report and recommendation, wherein she asserts that the evidence was insufficient to support the charges in counts I, II, and VII and that the recommended sanction is unreasonable and excessive.

## STANDARD OF REVIEW

A proceeding to discipline an attorney is a trial de novo on the record, in which the Nebraska Supreme Court reaches a conclusion independent of the findings of the referee; provided, however, that where the credible evidence is in conflict on a material issue of fact, the court considers and may give weight to the fact that the referee heard and observed the witnesses and accepted one version of the facts rather than another. *State ex rel. Counsel for Dis. v. Achola*, 266 Neb. 808, 669 N.W.2d 649 (2003).

Each attorney discipline case must be evaluated individually in light of its particular facts and circumstances. *State ex rel. Special Counsel for Dis. v. Shapiro*, 266 Neb. 328, 665 N.W.2d 615 (2003).

Disciplinary charges against an attorney must be established by clear and convincing evidence. *State ex rel. Counsel for Dis. v. Achola, supra.*

## ANALYSIS

As to count I, the stipulation of the parties attests that Swanson never deposited the money given to her by her client into an attorney trust account. Instead, this money was kept in Swanson's office for "safekeeping." Swanson has stipulated that she never presented her client with a billing statement and that she failed to keep a contemporaneous record of the client's funds as they were disbursed to the client. As such, the Counsel for Discipline has submitted clear and convincing evidence that Swanson violated DR 1-102(A)(1), DR 9-102(A) and (B)(3), and her oath of office as an attorney.

As to count II, the Counsel for Discipline has presented clear and convincing evidence that the money Swanson received during her first visit with the client was never deposited into an attorney trust account. It is undisputed that this client obtained a default judgment against Swanson for the full amount Swanson had received during their first meeting. More troubling, Swanson stipulated that nearly 3 years after the entry of this default judgment, she had yet to pay the client any of the money that is owed to him. This evidence clearly and convincingly demonstrates that Swanson violated DR 1-102(A)(1), (5), and (6); Canon 2, DR 2-110(A)(3); DR 9-102(A); and her oath of office as an attorney.

As to count III, Swanson stipulated that she engaged in a sexual relationship with a client while she was representing him in a dissolution of marriage action. The evidence established that the case involved issues of child custody, and as such, we find that clear and convincing evidence was presented to show that Swanson violated DR 1-102(A)(1); Canon 7, DR 7-101(A)(3); and her oath of office as an attorney.

With regard to count VII, the Counsel for Discipline presented clear and convincing evidence that Swanson refused to answer questions by opposing counsel during a deposition. In addition, there is no dispute that Swanson continued to refuse to answer these questions, in direct violation of an order issued by the York County District Court, which subsequently led that court to order sanctions. The evidence was undisputed that a default judgment had been entered against Swanson for the return of funds that had been given to her as an advance fee by

a client. The Counsel for Discipline presented sufficient evidence to show that Swanson had failed to pay any portion of this judgment. We therefore conclude that there was clear and convincing evidence presented to establish that Swanson had violated DR 1-102(A)(1), (5), and (6); DR 9-102(B)(4); and her oath of office as an attorney.

The basic issues in a disciplinary proceeding against a lawyer are whether discipline should be imposed and, if so, the type of discipline appropriate under the circumstances. *State ex rel. Counsel for Dis. v. James, ante* p. 186, 673 N.W.2d 214 (2004). Neb. Ct. R. of Discipline 4 (rev. 2001) provides that the following may be considered by this court as sanctions for attorney misconduct: (1) disbarment; (2) suspension for a fixed period of time; (3) probation in lieu of suspension, on such terms as the court may designate; (4) censure and reprimand; or (5) temporary suspension. *State ex rel. Counsel for Dis. v. James, supra.*

Each case justifying discipline of an attorney must be evaluated individually in light of the particular facts and circumstances of that case. *Id.* To determine whether and to what extent discipline should be imposed in a lawyer discipline proceeding, this court considers the following factors: (1) the nature of the offense, (2) the need for deterring others, (3) the maintenance of the reputation of the bar as a whole, (4) the protection of the public, (5) the attitude of the offender generally, and (6) the offender's present or future fitness to continue in the practice of law. *State ex rel. Counsel for Dis. v. Mills, ante* p. 57, 671 N.W.2d 765 (2003). Cumulative acts of attorney misconduct are distinguishable from isolated incidents and are therefore deserving of more serious sanctions. *State ex rel. Counsel for Dis. v. Cannon,* 266 Neb. 507, 666 N.W.2d 734 (2003).

Based upon Swanson's actions and her attitude and conduct during the proceedings, the referee recommended disbarment as the appropriate sanction. Swanson claims that such punishment is excessive and unreasonable. We acknowledge that a judgment of disbarment is a most severe penalty; however, the charges against Swanson involve multiple incidents with various clients over a number of years. The evidence shows that Swanson has repeated the same questionable acts with different clients. With respect to counts I and II, she failed to deposit the money in an

appropriate trust account. More disturbing is the evidence concerning counts II and VII that Swanson failed to pay any portion of the two default judgments entered against her.

Most disturbing to this court is the referee's finding that Swanson lied in order to keep her clients' money without justification. While it was noted by the referee that Swanson's conduct regarding count I was relatively benign in that it did not evidence an effort to conceal or to cheat any individual, the referee found with regard to counts II and VII that Swanson's conduct involved lies, deception, and ruses in order to keep money to which she was not entitled. It is this type of behavior that caused the referee to question Swanson's fitness to continue in the practice of law. The referee also found that Swanson's indifference to the disciplinary process and to the administration of justice evidenced a disregard for her clients, her license, and her reputation.

When this court considers the cumulative nature of Swanson's actions, the need to protect the public, the need to deter others from similar conduct, the reputation of the bar as a whole, Swanson's fitness to practice law, and the lack of mitigating circumstances, we conclude that disbarment is the appropriate sanction.

## CONCLUSION

It is the judgment of this court that Swanson should be and hereby is disbarred from the practice of law in the State of Nebraska, effective immediately. Swanson is directed to comply with Neb. Ct. R. of Discipline 16 (rev. 2001), and upon failure to do so, she shall be subject to punishment for contempt of this court. Swanson is directed to pay costs and expenses in accordance with Neb. Rev. Stat. §§ 7-114 and 7-115 (Reissue 1997) and Neb. Ct. R. of Discipline 23(B) (rev. 2001).

JUDGMENT OF DISBARMENT.