STATE OF NEBRASKA EX REL. COUNSEL FOR DISCIPLINE OF THE NEBRASKA SUPREME COURT, RELATOR, V. ALICE S. HORNEBER, RESPONDENT.

708 N.W.2d 620

Filed January 20, 2006. No. S-04-1139.

Kent L. Frobish, Assistant Counsel for Discipline, for relator.

William Horneber, of Horneber Law Firm, for respondent.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.

PER CURIAM.

## INTRODUCTION

Alice S. Horneber was admitted to the practice of law in the State of Nebraska on February 3, 1983. At all times relevant hereto, she was engaged in private practice in Sioux City, Iowa. On October 12, 2004, formal charges were filed against Horneber. After a formal hearing, the referee concluded that Horneber had violated the Nebraska Code of Professional Responsibility and recommended a 1-year suspension. Horneber filed exceptions to the referee's findings and recommended sanction.

## BACKGROUND

Ronnie Thornton and Lonnie Thornton, brothers, owned Thornton Plumbing & Heating, a partnership, and Thornton Plumbing & Heating, Inc. The partnership owned certain real estate in Woodbury County, Iowa, described as the East 75 feet of Lot 12, Block 40, of Sioux City (the Woodbury property).

On August 29, 2000, Ronnie and Barbara J. Thornton were divorced in the district court for Dakota County, Nebraska. Horneber represented Ronnie in these proceedings. Among other interests, the dissolution decree granted to Barbara the following:

> All of [Ronnie's] interest, real or personal, in and to Thornton Plumbing & Heating, a partnership . . . including, but not limited to, [Ronnie's] interest in and to [the Woodbury property] as well as any interest in any other real estate held by [Ronnie] in Dakota County constituting an asset in this partnership and all shares (assumed to be

500 common shares) or other interests held by [Ronnie] in and to Thornton Plumbing & Heating, Incorporated . . . subject to debt of $9,908.00.

The decree ordered that Ronnie was, within 30 days, to "execute and deliver to [Barbara] any deed or other documents that may be reasonably required to accomplish the intent of this Decree." The decree provided that in the event either party failed to comply within 30 days with the provisions of the decree concerning the division of marital assets, then "this Decree shall constitute an actual grant, assignment and conveyance of the title to the property and rights in such manner and with such force and effect as shall be necessary to effectuate the terms of the Decree." No appeal was taken from the decree.

Upon Horneber's advice, no affirmative steps were taken by Ronnie to convey any interest in the partnership or its real or personal property, nor did Ronnie affirmatively transfer his shares in Thornton Plumbing & Heating, Inc. On December 29, 2000, Barbara filed a motion for contempt, claiming that Ronnie had failed to provide the necessary deeds or documentation to effectuate the terms of the decree with regard to Thornton Plumbing & Heating. Specifically, the motion alleged that Ronnie had failed to transfer his stock and had failed to provide Barbara with information pertaining to the partnership. Barbara was unable to serve Ronnie with the summons, and the court sustained a motion for substitute service. The required documents were mailed to Ronnie's last known address via certified mail, and on November 19, 2002, Ronnie, having never appeared, was found in contempt and ordered to be placed in custody.

Ronnie filed a special appearance, which was overruled by the trial court. On September 9, 2003, a hearing was held as to whether Ronnie had complied with the dissolution decree. Horneber attempted to present evidence that the business bylaws of the corporation did not allow Ronnie to transfer his stock and that the automatic attempted transfer by virtue of the decree resulted in a forfeiture of Ronnie's stock interest to Lonnie. Evidence was also presented as to due-on-sale clauses that would be triggered upon the transfer of any partnership property. The court found that Ronnie had failed to show cause why he should be

released from custody. Horneber requested specific direction as to how to purge the contempt, to which request the court responded that Ronnie needed to "transfer whatever interest is provided by — in the decree." The court stated that if Ronnie wished, he could have further opportunity to show by way of hearing that it was impossible to comply with the decree.

Horneber filed a notice of compliance on Ronnie's behalf on September 9, 2003. Attached thereto was a stock certificate for Thornton Plumbing & Heating, Inc., transferring 500 shares of stock in the name of Ronnie to Barbara as of September 9. Also attached was an "Assignment of Partnership Interest" wherein, on September 9, Ronnie, a general partner in Thornton Plumbing & Heating, assigned "all his interest in partnership property both real and personal and wheresoever situated to Barbara." A September 9 quitclaim deed was also attached to the notice whereby Ronnie quitclaimed to Barbara "all our right, title, interest, estate, claim and demand" in the Woodbury property. The court issued an order that same date releasing Ronnie from custody on bond, conditioned upon his appearance at a hearing on September 12.

At the September 12, 2003, hearing, Barbara contested whether the decree had been complied with. She offered a quitclaim deed, which Horneber had drafted, wherein Ronnie had quitclaimed to Lonnie "all our right, title, interest, estate, claim and demand" in the Woodbury property on January 14, 2003. Barbara also offered as evidence a warranty deed conveying, on January 14, the Woodbury property from Lonnie to Thomas Joe Schatz and Lisa L. Schatz. This deed was also drafted by Horneber.

The court questioned Horneber as to how Ronnie's deed to Barbara complied with the decree when at the time of the deed, Ronnie no longer had any interest to convey, having already conveyed all his interest to Lonnie by virtue of the January 14, 2003, quitclaim deed. Horneber agreed with the court that on September 9, Ronnie purported to convey to Barbara an interest in real estate in which he had no interest, but she attempted to explain that the prior conveyance to Lonnie was necessary. She stated that the conveyance to Lonnie was effectuated because Ronnie was a personal guarantor on the numerous debts owed by

the partnership and that Barbara had refused to sign off to be a personal guarantor of those debts. Therefore, deeds to Lonnie and, ultimately, to the Schatzes, were necessary to pay some of the debts. The court rejected this as an acceptable reason to convey to Barbara what it described as "a sham deed" and remanded Ronnie back into custody. In response, Horneber attempted to present the testimony of an accountant to explain the fact that the real estate was owned by the partnership, and not by any individuals, and attempted to retract her prior admission that Ronnie had no interest in the real estate on September 9. Upon the court's further questioning, however, she agreed that the Schatzes owned the property at the time of the September 9 deed to Barbara. The court then stated that this fact was enough to show noncompliance and reiterated its remand of Ronnie into custody.

After the court entered an order awarding Barbara attorney fees, Ronnie appealed the order and the underlying findings of personal service and contempt to the Nebraska Court of Appeals. Horneber argued on Ronnie's behalf to the Court of Appeals that any transfer of the business assets did nothing to eliminate Barbara's "interest" awarded by the decree, but only changed the nature of that interest. Horneber argued that the decree never granted Barbara ownership in the Woodbury property itself. She argued that an interest in the partnership was automatically transferred to Barbara by virtue of the decree 30 days after its issuance. In other words, she contended to the Court of Appeals that it was actually at the time of the quitclaim deed to Lonnie that Ronnie had nothing to convey, since his interest had already been automatically transferred by the decree. The later quitclaim deed to Barbara, then, was only repetition of that automatic effect of the decree.

The Court of Appeals, in *Thornton v. Thornton*, 13 Neb. App. 912, 704 N.W.2d 243 (2005), held that there had been no effective substitute service upon Ronnie. Because there was no effective service at the time Ronnie was found in contempt and he had not yet voluntarily submitted to the court's jurisdiction, the Court of Appeals held that the trial court lacked jurisdiction over Ronnie. It accordingly vacated the trial court's finding of contempt, its bench warrant, and its award of attorney fees to Barbara and remanded the matter to the trial court for further

proceedings consistent with its opinion. It did not address any of the underlying merits of the finding of contempt.

## FORMAL CHARGES

The formal charges against Horneber were filed in this court on October 12, 2004. The charges set forth general facts concerning the Thornton business and the award to Barbara in the dissolution decree. The charges asserted that upon Horneber's advice, Ronnie refused to provide Barbara with any deeds, stock certificates, or other documents to accomplish the transfer of Ronnie's interest in the plumbing business to Barbara. The charges then described the quitclaim deed given to Barbara on September 9, 2003, transferring any interest Ronnie had in the Woodbury property, and stated that prior thereto, a quitclaim deed had been executed giving that same interest to Lonnie. The charges also described that prior to the quitclaim deed to Barbara, a warranty deed had transferred the Woodbury property from Lonnie to the Schatzes.

The charges alleged that through these acts, Horneber had violated the following provisions found in Canons 1 and 7 of the Code of Professional Responsibility:

DR 1-102 Misconduct.

(A) A lawyer shall not:

(1) Violate a Disciplinary Rule.

. . . .

(4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.

(5) Engage in conduct that is prejudicial to the administration of justice. . . .

. . . .

DR 7-102 Representing a Client Within the Bounds of the Law.

(A) In his or her representation of a client, a lawyer shall not:

. . . .

(3) Conceal or knowingly fail to disclose that which the lawyer is required by law to reveal.

(4) Knowingly use perjured testimony or false evidence.

. . . .

(6) Participate in the creation or preservation of evidence when the lawyer knows or it is obvious that the evidence is false.

(7) Counsel or assist a client in conduct that the lawyer knows to be illegal or fraudulent.

## DISCIPLINARY HEARING

At the disciplinary hearing, Horneber presented evidence that under controlling Iowa law, because the partnership owned the Woodbury property and Ronnie did not own the property personally, Ronnie could not transfer the real estate itself to Barbara. Under Iowa Code Ann. § 486A.501 (West 1999), "[a] partner is not a co-owner of partnership property and has no interest in partnership property which can be transferred, either voluntarily or involuntarily." Rather, Ronnie could transfer only his share of the profits and losses of the partnership. Horneber argued that such interest was what the dissolution decree granted Barbara and that any conveyance of the Woodbury property to third parties by the partnership was in no way contrary to the decree.

Horneber argued that at the time of the January 14, 2003, quitclaim deed, Ronnie's interest had already been taken away by virtue of the automatic conveyance language of the dissolution decree. However, because she was at a loss for what else she could do to purge Ronnie of contempt, Horneber testified that she prepared the later quitclaim deed to Barbara "to make sure that if there was any possible interest anybody could claim he had, then Barb had it."

With regard to the quitclaim deed from Ronnie to Lonnie, Horneber reiterated that Ronnie's interest in the business had already been taken away by the automatic effect of the decree. However, Ronnie remained personally liable under a personal guarantee for some $200,000 in debt, and the lender institution had allegedly requested such a deed as "just an initial thing so that the lending institution could be talking with this particular person who was willing to maybe take on and shoulder some of these debts." Upon examination by the referee, Horneber indicated that the quitclaim deed to Lonnie was some means of allowing the lending institution to share information with the

Schatzes about the business. She admitted that a consent form would have been "a more clean way of doing" that.

Horneber testified that the warranty deed from Lonnie to the Schatzes had not been prepared to convey or attempt to convey the partnership interest in the Woodbury property, but was simply part of ongoing negotiations. In fact, she pointed out that since the warranty deed was issued by Lonnie as an individual and not by the partnership, under Iowa law, it could not be effective as a real estate transfer. Rather, like the deed to Lonnie, she claimed this deed was simply to allow the Schatzes to have the "ability to review information and get whatever information" they wanted.

Horneber claimed that there was an oral agreement with the Schatzes that had never been finalized and that she did not believe the Schatzes understood the deed to have conveyed any actual title to the Woodbury property. However, the contention that the Schatzes did not understand the real estate to have been transferred was challenged with the admission of a letter wherein the Schatzes offered to sell back the Woodbury property for a purchase price something above what they paid for it, but at a reasonable price. To the question as to what the Schatzes had paid for the property, Horneber responded that they had been discussing what might be an appropriate total price, but that "there had been no assignment of any price to any particular thing." Several letters were then entered into evidence, apparently to show that the Schatzes were still negotiating with Lonnie as to "a final resolution of the performance necessary under [the] draft real estate contract/asset transfer agreement." While these letters describe the fact that a purchase price for "the business" had not yet been determined, they do not support the idea that the Schatzes did not understand the warranty deed to have conveyed the Woodbury property.

## REFEREE'S FINDINGS

The referee appointed to conduct a hearing on this matter noted:

> During the September 12, 2003 hearing before [the] Judge . . . Horneber acknowledged to the Court that [the Schatzes] owned the Iowa real estate because of the

> January, 2003, deed. . . . Horneber offered a Quit Claim Deed on September 9, 2003, in order to get Ronnie Thornton out of jail, but knew full well that the real estate had already been transferred to [the Schatzes]. Yet, in testimony at the hearing before this Referee . . . Horneber claimed that the January 2003 deeds from Ronnie Thornton to Lonnie Thornton and from Lonnie Thornton to the Schatz[e]s were of no effect.

The referee noted the evidence gave the appearance that, in order to purge Ronnie of contempt, Horneber had been attempting to convince the Schatzes to reconvey the Woodbury property to Lonnie, presumably so that interest could be transferred back to Ronnie, and then to Barbara, to be in compliance with the decree.

The referee found that there was clear and convincing evidence that because of the prior deeds to Lonnie and the Schatzes, the quitclaim deed to Barbara for the Woodbury property submitted to the trial court on September 9, 2003, was a fraud on the trial court. The referee found any argument that under Iowa law, an individual cannot convey partnership real estate was irrelevant to the conclusion that the quitclaim deed to Barbara as to the Woodbury property was a nullity. The referee did not find Horneber's explanation that the quitclaim deed to Lonnie was simply to permit some third party to obtain information about the Thornton business was credible, stating: "This Referee cannot fathom how a Quit Claim Deed from Ronnie Thornton to Lonnie Thornton (partners in the plumbing business) would authorize a bank to deliver information to a third party concerning the partnership business and its debts."

The referee found that Horneber's conduct involved dishonesty, fraud, deceit, or misrepresentation in violation of DR 1-102(A)(4). It further found Horneber's actions to be in violation of DR 7-102(A)(7) in that she counseled and assisted her client, Ronnie, in conduct she knew to be illegal or fraudulent. The referee also found that Horneber had engaged in conduct prejudicial to the administration of justice and, therefore, in violation of DR 1-102(A)(5).

In its recommendation, the referee concluded that no attorney should be permitted to present fraudulent and deceitful evidence to a court in order to purge her client of contempt. It further

noted that Horneber's "attitude in these disciplinary proceedings was one of denial and less than credible explanations for her conduct." The referee recommended that Horneber be suspended from the practice of law for a period not less than 1 year.

## STANDARD OF REVIEW

■ To sustain a charge in a disciplinary proceeding against an attorney, the charge must be established by clear and convincing evidence. *State ex rel. Counsel for Dis. v. Widtfeldt*, 269 Neb. 289, 691 N.W.2d 531 (2005).

■ A proceeding to discipline an attorney is a trial de novo on the record, in which the Nebraska Supreme Court reaches a conclusion independent of the findings of the referee; provided, however, that where the credible evidence is in conflict on a material issue of fact, the court considers and may give weight to the fact that the referee heard and observed the witnesses and accepted one version of the facts rather than another. *State ex rel. NSBA v. Gallner*, 263 Neb. 135, 638 N.W.2d 819 (2002).

## ANALYSIS

■ We first note Horneber's contentions that this court lacks jurisdiction to consider the quitclaim deed to Lonnie and that this subject is beyond the scope of the formal charges and contrary to the Counsel for Discipline's prior representations as to the subject of the disciplinary proceedings. Horneber's jurisdictional claim is based on the fact that the deed occurred outside of Nebraska and lacks any nexus with Nebraska. However, it is clear that this court has the authority to discipline attorneys for conduct committed in another state. See *State ex rel. Counsel for Dis. v. Rokahr*, 267 Neb. 436, 675 N.W.2d 117 (2004). Therefore, we find no merit to Horneber's objection in this regard. As to the Counsel for Discipline's prior representations, we do not find those relevant except insofar as they concern what is or is not found in the formal charges against Horneber. Only those matters which are specifically charged in the complaint in a disciplinary proceeding can be considered. *State ex rel. Counsel for Dis. v. Petersen*, 264 Neb. 790, 652 N.W.2d 91 (2002). The complaint clearly referenced the quitclaim deed to Ronnie in its iteration of the "acts and omissions"

which were alleged to have constituted violations of Horneber's oath of office as an attorney and provisions of the Code of Professional Responsibility. Thus, the quitclaim deed to Lonnie is within the scope of the formal charges.

Horneber also contests various representations of fact made in the Counsel for Discipline's trial brief and the alleged incorporation of some of those facts in the referee's report, which facts Horneber states are not properly before the referee, irrelevant, and beyond the scope of the charges. Our findings in our de novo review regarding Horneber's breach of the disciplinary rules do not touch on these allegedly improper issues, and therefore Horneber has suffered no prejudice from any of the alleged misstatements in the brief or referee's report. Horneber also discusses various issues regarding her failure to advise Ronnie to affirmatively convey his stock to Barbara. We do not base our current findings on any issue as to the stock conveyance, since that issue was specifically excluded by the referee from consideration on the formal charges currently before us.

Upon our de novo review of the record, we find by clear and convincing evidence that Horneber violated DR 1-102(A)(4) and (5) and DR 7-102(A)(7). The numerous deeds prepared by Horneber since the dissolution decree, and her continuously changing explanations about her intent in preparing these documents, make it difficult to decipher exactly which documents Horneber knew to be fraudulent. However, it is clear that Horneber's inconsistency is in no small part an attempt to placate the court before which she stands at any given moment. Nor can we avoid the conclusion that in this series of deeds before us, Horneber's conduct in drafting some of the deeds involved dishonesty, fraud, deceit, or misrepresentation; that she counseled and assisted Ronnie in conduct she knew to be illegal or fraudulent; and that she engaged in conduct prejudicial to the administration of justice.

Horneber first attempts to explain the various deeds by focusing on the fact that under Iowa law, a partner cannot transfer ownership in partnership property. Iowa Code § 486A.501 states that "[a] partner is not a co-owner of partnership property and has no interest in partnership property which can be transferred, either voluntarily or involuntarily." Iowa Code Ann.

§ 486A.502 (West 1999) states in part that "[t]he only transferable interest of a partner in the partnership is the partner's share of the profits and losses of the partnership and the partner's right to receive distributions." Horneber asserts that the trial court, in finding Ronnie in contempt, misunderstood that the dissolution decree granted to Barbara only Ronnie's entitlement to any profits related to the Woodbury property, but did not grant her an ownership right to the property itself. Even assuming this to be true, we still conclude that Horneber conducted herself in a manner inconsistent with the Code of Professional Responsibility. It is clear that either the quitclaim deed to Lonnie or the subsequent quitclaim deed to Barbara, purporting to convey any interest Ronnie had in the Woodbury property, failed to convey anything at all. On their face, two consecutive deeds conveying the same interest to two different parties would render the later of those two deeds meaningless. That the deed was a quitclaim deed, which only purports to convey "any interest" owned, does not make it immune from being deceptive. Where "any interest" has already been conveyed to someone else, the second deed is completely vacuous. We find completely untenable Horneber's explanation that the quitclaim deed was never intended to be deceptive because it was effectuated only to allow the dissemination of financial information about the business to third parties.

The warranty deed wherein it is stated that Lonnie "sell[s] and convey[s]" the Woodbury property to the Schatzes is equally deceptive. Horneber attempted to show at the disciplinary hearing that the warranty deed did not make Ronnie's quitclaim deed to Barbara deceptive because the warranty deed did not, in fact, convey the property. Rather, similar to Horneber's explanation of the quitclaim deed to Lonnie, Horneber asserted that the warranty deed was some sort of consent for the sharing of information. She attempted to bolster her point by stating that under Iowa law, since the conveyor in the deed was Lonnie as an individual, not the partnership, it could not have operated to convey the Woodbury property. But even accepting Horneber's contention that she never intended the deed to convey the property to the Schatzes, it is clearly a deceptive deed. A warranty deed is not a necessary or appropriate means to make a simple consent

for the sharing of information to third parties. Before the warranty deed was effectuated, Horneber took the step of having Ronnie quitclaim any interest he might have in the Woodbury property to Lonnie, the only remaining partner. Whether or not this step was effective in allowing Lonnie to convey the property as an individual, it is certainly indicative of an attempt to make the warranty deed seem legitimate. The evidence further shows that the Schatzes understood the deed to have been an effective warranty deed.

Simply stated, we are unpersuaded by Horneber's various explanations for conduct that is self-evidently deceptive. From our review of the record, it is apparent that Horneber assisted her client, Ronnie, in an attempt to frustrate his divorce decree and that when that attempt failed, she engaged in a prolonged series of misleading transactions intended to extricate herself and Ronnie from the consequences of her actions. Not only was her conduct deceitful and prejudicial to the administration of justice, but it was a poor discharge of her ethical responsibility to Ronnie, who landed in jail as a result of Horneber's counsel.

 To determine whether and to what extent discipline should be imposed in a lawyer discipline proceeding, the Nebraska Supreme Court considers the following factors: (1) the nature of the offense, (2) the need for deterring others, (3) the maintenance of the reputation of the bar as a whole, (4) the protection of the public, (5) the attitude of the respondent generally, and (6) the respondent's present or future fitness to continue in the practice of law. *State ex rel. Counsel for Dis. v. Sutton*, 269 Neb. 640, 694 N.W.2d 647 (2005). To determine the proper discipline of an attorney, the Nebraska Supreme Court considers the attorney's acts both underlying the events of the case and throughout the proceeding. See *State ex rel. Counsel for Dis. v. Simmons, ante* p. 429, 703 N.W.2d 598 (2005).

We find *State ex rel. Counsel for Dis. v. Mills*, 267 Neb. 57, 671 N.W.2d 765 (2003), analogous to the case at bar. In *Mills*, the attorney, in the course of handling an estate case, (1) notarized certain renunciations and deeds without witnessing the signatures, (2) directed his secretary to alter the dates the renunciations were actually signed, (3) personally altered the dates of certain deeds from the dates they were actually signed, (4)

registered these altered documents with the county court and the register of deeds, (5) told an Internal Revenue Service investigator that he had no recollection of why the original documents contained "white out," and (6) filed a federal tax return form that he knew to be false. Many of these actions were arguably attempts to salvage his client's interests after the attorney had made several mistakes as to the correct course of action for his client.

We found most egregious the fact that the attorney told his client to lie to the Internal Revenue Service investigator and state that her children were actually present in town on the dates they allegedly signed their renunciations in the attorney's presence. We did, however, consider it a mitigating factor that the attorney eventually fully cooperated with the Counsel for Discipline's investigation and admitted his wrongdoing. We found the attorney violated, inter alia, DR 1-102(A)(4) and (5) and DR 7-102(A)(7), and suspended him for a period of 2 years, despite the referee's conclusion that the attorney be suspended for only 5 months.

Here, Horneber shows a similar pattern of deception. Moreover, she directed her client to participate in deceptive actions by having him sign the various deeds described above. Horneber has failed to recognize her wrongdoing, but instead continued in her attempts to confuse and deceive in her testimony at the disciplinary hearing. Considering the gravity of Horneber's actions, we hereby suspend Horneber from the practice of law for a period of 2 years, effective immediately. Horneber shall comply with Neb. Ct. R. of Discipline 16 (rev. 2004), and upon failure to do so, she shall be subject to punishment for contempt of this court. Horneber is further directed to pay costs and expenses in accordance with Neb. Rev. Stat. §§ 7-114 and 7-115 (Reissue 1997) and Neb. Ct. R. of Discipline 23(B) (rev. 2001).

JUDGMENT OF SUSPENSION.