STATE OF NEBRASKA EX REL. COUNSEL FOR DISCIPLINE OF THE NEBRASKA SUPREME COURT, RELATOR,
V. JAMES WIDTFELDT, RESPONDENT.

716 N.W.2d 68

Filed June 23, 2006.    No. S-04-1400.

John W. Steele, Assistant Counsel for Discipline, for relator.

George H. Moyer, of Moyer, Moyer, Egley, Fullner & Montag, for respondent.

Hendry, C.J., Wright, Connolly, Gerrard, Stephan, and McCormack, JJ.

Per Curiam.

## NATURE OF CASE

This case presents the review of the uncontested findings of the referee in an attorney disciplinary proceeding.

## BACKGROUND

James Widtfeldt was admitted to the practice of law in Nebraska in 1978 and has a general practice in Holt County, Nebraska. He has previously been privately reprimanded for representing both sides of a tax case. He is currently under an order of indefinite suspension to be followed by a period of probation for filing irrelevant and abusive motions and pleadings in an unrelated case and for irrelevant and abusive written responses to the Counsel for Discipline reviewing that case. See *State ex rel. Counsel for Dis. v. Widtfeldt*, 269 Neb. 289, 691 N.W.2d 531 (2005).

The formal charges currently before us concern Widtfeldt's conduct in two separate probate proceedings (described separately in counts I and II) occurring prior to the current order of suspension. The formal charges alleged that Widtfeldt entered into agreement for, charged, or collected clearly excessive fees, in violation of Canon 2, DR 2-106(A), of the Nebraska Code of Professional Responsibility, and that he knowingly failed to disclose information or had knowingly made a false statement of law or fact during the proceedings, in violation of Canon 7,

DR 7-102, of the Nebraska Code of Professional Responsibility. The Counsel for Discipline also charged Widtfeldt with violation of Canon 1, DR-102(A), of the Nebraska Code of Professional Responsibility, which prohibits the violation of a disciplinary rule, engaging in conduct prejudicial to the administration of justice, or any other conduct that adversely reflects on the lawyer's fitness to practice law. After the appointment of the referee, a hearing was held at which Widtfeldt was present with counsel.

## COUNT I: MARR ESTATE

Count I involved the probate proceedings of the estate of Rose M. Marr. The evidence at the hearing showed that Widtfeldt entered into an agreement with the personal representatives of the estate to represent them and to receive attorney fees in the amount of 8 percent of the nonprobate and probate property. Widtfeldt later filed an inheritance tax worksheet with the county court, reflecting a gross estate value of $578,943.51 and an attorney fee of $46,434.22. The personal representatives paid Widtfeldt this amount from the estate assets, but the county court ultimately ordered the fees to be repaid to the estate. Widtfeldt complied with this order.

Widtfeldt testified at that hearing that in the past, his standard fee for estate cases was 2 percent of the gross estate, plus extra sums for extraordinary work. He attempted to explain the 8-percent figure as compensation for conservatorship work at 1 percent per year for 7 years, plus 1 percent for the estate work.

Widtfeldt admitted that a conservatorship was never actually filed and that the "conservatorship work" was done after Marr's death. This work involved doublechecking all the canceled checks issued by Marr's attorneys in fact pursuant to Marr's powers of attorney. Widtfeldt described his work as compiling "an account like a conservator." Widtfeldt testified that he did this pursuant to Marr's predeath wish that Widtfeldt conduct such a review informally, without court oversight, and that Widtfeldt wait to be paid out of the estate for such services. Widtfeldt did not have a formal written agreement with Marr to that effect. Widtfeldt was paid during Marr's lifetime for services such as the drafting of her will, and for a cancellation fee for not completing the guardianship-conservatorship which he had drafted for Marr.

The allegation of misrepresentation in the Marr estate stemmed from the fact that the personal representatives were also each initially afforded, through Widtfeldt, 8 percent of the estate under a similar theory of compensation for their past services to Marr. However, when the petition for their appointment was filed, Widtfeldt stated therein that they were not creditors of the estate. Widtfeldt explained that neither of the personal representatives had a formal compensation arrangement with Marr and that they had told him they were not creditors of the estate. Instead, the compensation was as per Marr's expressed wishes to Widtfeldt that they in fact later be generously compensated.

The referee found, by clear and convincing evidence, that Widtfeldt violated DR 2-106(A) by entering into an agreement for, charging, or collecting an illegal or clearly excessive fee. However, the referee concluded that he could not find by clear and convincing evidence that Widtfeldt had intentionally misled the county court in filing the personal representative applications as he did. The referee explained that the personal representatives' prior services were admittedly done partially out of friendship with Marr and that no terms of payment had been formally agreed upon. Thus, the referee did not find a "creditor" relationship.

## COUNT II: KOLLMAN ESTATE

Count II involved the estate of Walter Kollman and Widtfeldt's representation of its personal representatives. Widtfeldt entered into an agreement with the personal representatives for attorney fees in the amount of 5 percent of the estate, with a like percentage designated for the services of each personal representative. An inheritance tax worksheet was eventually presented to and signed by the personal representatives, setting forth a gross estate of $1,419,994.70, attorney fees of $100,999.74 (which was roughly 7 percent of the assets), and personal representatives' fees in the amount of $201,999.47. This sheet was presented to the county attorney, who informed Widtfeldt that he would not approve the worksheet and that Widtfeldt would have to obtain court approval for any such fees.

The worksheet was never filed with the court. Widtfeldt claimed that the reason he never filed this first worksheet was

because it contained errors. He explained that there were mathematical errors, on which he did not elaborate. In addition, Widtfeldt testified that "tempers were fairly high." A litigator had been hired through him for the estate to handle litigation with certain heirs, and Widtfeldt explained that he thought that he was going to have to pay the litigator's expenses out of his own fees because the fees were being informally contested by one of the personal representatives.

Subsequently, Widtfeldt drafted or filed several different and conflicting motions for approval of his fees, ranging from 2 to 5 percent of the estate. Ultimately, the county court, noting that normal fees for estate actions in that area were 1 percent, awarded a 2-percent fee to Widtfeldt and ordered that any excess fees be refunded. Widtfeldt, pursuant to such order, refunded $28,398 of previously paid fees. The aforementioned litigator testified at the disciplinary hearing that a reasonable rate was between 2 to 3 percent.

The misrepresentation allegations of count II related to alleged false statements to the county court in Widtfeldt's pleadings regarding the scheduling of hearings. The Counsel for Discipline however, eventually conceded that Widtfeldt's testimony established that the misrepresentations were unintentional and were a result of administrative error.

The referee found with regard to the false pleadings allegation that the evidence failed to establish any violation. However, the referee found that Widtfeldt had violated DR 2-106(A) by charging, albeit without successfully collecting, an excessive fee.

## REFEREE RECOMMENDATIONS

The referee recommended that Widtfeldt be publicly reprimanded and that his current indefinite suspension remain in full force and effect without modification. In so recommending, the referee noted that Widtfeldt failed to produce evidence that the events in question were isolated occurrences. The referee did take into consideration Widtfeldt's behavior at the hearing, which the referee described as "contrite and cooperative." At the same time, however, the referee noted that Widtfeldt did not actually admit to any wrongdoing. The referee also took into account Widtfeldt's previous reprimand and his current suspension.

No exceptions were filed to the referee's findings by either party to the proceeding. We sustained the Counsel for Discipline's motion for judgment on the pleadings as to the violations, but not as to the proposed discipline.

## ASSIGNMENTS OF ERROR

In Widtfeldt's brief, he assigns that the referee erred (1) by finding that he contracted for, charged, or collected a clearly excessive fee in the Kollman estate and (2) in determining that Widtfeldt's conduct in the Kollman estate was cumulative of his conduct in the Marr estate.

## ANALYSIS

Widtfeldt's brief focuses on count II and his allegation that he never really intended to collect the 7-percent fee found by the referee to be excessive. The Counsel for Discipline does not assert that any of the subsequent filings of either 2 or 5 percent were clearly excessive given the protracted litigation of the case, and the referee's findings appear to focus on the 7-percent figure.

Widtfeldt accordingly takes issue with the referee's recommendation that he be publicly reprimanded for his conduct related to the Kollman estate. Widtfeldt does not take issue with the referee's recommendation that his current status of indefinite suspension should continue or with the public reprimand in relation to the Marr estate.

Under existing case law, the Nebraska Supreme Court is limited in its review to examining only those items to which the parties have taken exception. *State ex. rel. Counsel for Dis. v. Petersen, ante* p. 262, 710 N.W.2d 646 (2006). When no exceptions to the referee's findings of fact are filed by either party in a disciplinary proceeding, the Nebraska Supreme Court may, in its discretion, consider the referee's findings as final and conclusive. See, *id.*; Neb. Ct. R. of Discipline 10(L) (rev. 2005). In sustaining the Counsel for Discipline's motion for judgment on the pleadings, we have already concluded that Widtfeldt's conduct was in violation of DR 2-106(A) on two separate occasions. We consider Widtfeldt's arguments in his brief to this court to the extent that they are relevant to the appropriate sanction to be imposed from that conduct. We note that the conduct at issue in this case occurred prior to the September 1, 2005, effective date of the

Nebraska Rules of Professional Conduct and is, thus, governed by the now-superseded Code of Professional Responsibility.

To determine whether and to what extent discipline should be imposed in a lawyer discipline proceeding, the Nebraska Supreme Court considers the following factors: (1) the nature of the offense, (2) the need for deterring others, (3) the maintenance of the reputation of the bar as a whole, (4) the protection of the public, (5) the attitude of the respondent generally, and (6) the respondent's present or future fitness to continue in the practice of law. *State ex rel. Counsel for Dis. v. Horneber*, 270 Neb. 951, 708 N.W.2d 620 (2006). Each attorney discipline case must be evaluated individually in light of its particular facts and circumstances. In addition, the propriety of a sanction must be considered with reference to the sanctions imposed in prior similar cases. *State ex rel. Counsel for Dis. v. Widtfeldt*, 269 Neb. 289, 691 N.W.2d 531 (2005).

The referee, in recommending a public reprimand, considered the case of *State ex rel. Counsel for Dis. v. Palagi*, 269 Neb. 398, 693 N.W.2d 276 (2005), wherein we publicly reprimanded an attorney for having charged an excessive fee in a wrongful death matter. The attorney was also found to have improperly advanced financial assistance to a client and failed to return the property of clients. Other cases considering the issue of excessive fees are limited, and the circumstances in those cases also presented additional violations of the Code of Professional Responsibility. See, *State ex rel. Special Counsel for Dis. v. Shapiro*, 266 Neb. 328, 665 N.W.2d 615 (2003); *State ex rel. Counsel for Dis. v. Huston*, 262 Neb. 481, 631 N.W.2d 913 (2001); *State ex rel. NSBA v. Miller*, 258 Neb. 181, 602 N.W.2d 486 (1999); *State ex rel. NSBA v. Kirshen*, 232 Neb. 445, 441 N.W.2d 161 (1989).

Widtfeldt's current order of suspension is subject to reinstatement followed by a period of probation of not less than 1 year. In order to be reinstated under this order, we explained that he will need to establish that counseling has resulted in behavioral changes that will allow him to practice law within the disciplinary rules. At the disciplinary hearing considered in *State ex rel. Counsel for Dis. v. Widtfeldt, supra,* a psychologist concluded that although intelligent, Widtfeldt had narcissistic and obsessive-compulsive personality features which interfered

858

with his ability to reason through certain issues. However, the psychologist opined that Widtfeldt could complete a plan to modify his behavior so that there was a much greater chance that problems would not reoccur.

▪ Neb. Ct. R. of Discipline 4 (rev. 2004) provides that misconduct shall be grounds for (1) disbarment; (2) suspension; (3) probation in lieu of or subsequent to suspension, on such terms as we may designate; (4) censure and reprimand; (5) temporary suspension; or (6) private reprimand by the Committee on Inquiry or Disciplinary Review Board.

▪ In considering the appropriate discipline in this case, we are mindful of the fact that this is not the first instance of misconduct by Widtfeldt. Cumulative acts of attorney misconduct are distinguishable from isolated incidents and are therefore deserving of more serious sanctions. *State ex rel. Counsel for Dis. v. Swanson,* 267 Neb. 540, 675 N.W.2d 674 (2004). Although Widtfeldt is currently suspended, we find that his cumulative acts of misconduct merit more of a sanction than is afforded by a public reprimand. We conclude that the appropriate discipline in this case for the two counts of violating DR 2-106(A) is a judgment of suspension for a period of 1 year.

## CONCLUSION

We order that Widtfeldt should be and hereby is suspended from the practice of law in the State of Nebraska for a period of 1 year, effective immediately. Widtfeldt is directed to pay costs and expenses in accordance with Neb. Rev. Stat. §§ 7-114 and 7-115 (Reissue 1997) and Neb. Ct. R. of Discipline 23(B) (rev. 2001).

JUDGMENT OF SUSPENSION.

MILLER-LERMAN, J., not participating.