STATE OF NEBRASKA EX REL. COUNSEL FOR DISCIPLINE
OF THE NEBRASKA SUPREME COURT, RELATOR, V.
JAMES WIDTFELDT, RESPONDENT.

691 N.W.2d 531

Filed February 4, 2005. No. S-03-1312.

John W. Steele, Assistant Counsel for Discipline, for relator.

George H. Moyer, of Moyer, Moyer, Egley, Fullner & Warnemunde, for respondent.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, MCCORMACK, and MILLER-LERMAN, JJ.

PER CURIAM.

The Counsel for Discipline of the Nebraska Supreme Court filed formal charges against James Widtfeldt alleging ethical violations. A referee was appointed who heard evidence and made recommendations. We order an indefinite period of suspension followed by a period of probation.

## BACKGROUND

Widtfeldt was admitted to the practice of law in Nebraska in 1978 and entered practice in Holt County. He has a general practice and spends' half of each day managing personal business affairs and the remainder practicing law. He has previously received a private reprimand for representing both sides of a controversy in a tax case that is unrelated to the current action.

This complaint arose after Widtfeldt filed improper motions and pleadings in several cases, stemming from difficulties he had with Attorney Forrest Peetz and the city of O'Neill. At the hearing before the referee, Widtfeldt admitted that he does not get along with Peetz and that his animosity toward Peetz had crept into his pleadings at times. The animosity stems from Peetz' 1979 purchase of a home from a judge (now deceased) and Widtfeldt's strong feelings against financial transactions between judges and attorneys. Widtfeldt stated that he remains troubled that the transaction occurred and that when he sees a judicial decision that he believes is incorrect, he worries there may be other transactions he is unaware of which may be influencing the decisions between attorneys and judges.

Widtfeldt also admitted that he experienced "significant friction" with the city of O'Neill over rental property and admitted that pleadings and motions in that case could appear to be based on personal animosity. However, he believes that his relationship with the city has improved.

The record contains examples of poorly drafted pleadings and motions that are lengthy and contain numerous, rambling, irrelevant details, making the pleadings difficult to understand. In one instance, Widtfeldt filed a motion in limine that had no relation to the alleged facts of the action. In another instance, a motion for a protective order filed by Widtfeldt against the city of O'Neill included three pages of allegations about perceived violations of various inspection laws or ordinances by the city attorney, Peetz, and another attorney.

In response to the complaint filed with the Counsel for Discipline, Widtfeldt filed lengthy responses containing irrelevant and inflammatory material. For example, Widtfeldt continued to malign Peetz and a judge about the sale of the house. In another instance, Widtfeldt's responses included multiple pages

of inflammatory allegations about Peetz' alleged drinking habits and behavior at bar association meetings. Widtfeldt compared Peetz to Adolf Hitler, stating: "Peetz['] mustache is not the only resemblance to a certain famous dictator who liked to circumvent the law, extract oaths of allegiance to himself personally, and exterminate defenseless civilians, religious and racial minorities in the 1940s." The responses also contained allegations about irrelevant sexual activity.

Widtfeldt underwent a psychological evaluation for this action. Mark P. Hannappel, a psychologist, concluded that while Widtfeldt has superior intelligence, he is likely to have difficulty understanding nonverbal interactions, is likely to " 'get caught up in the details,' " and sometimes misses the " 'big picture.' " Hannappel noted narcissistic and obsessive-compulsive personality features and concluded that personality issues interfere with Widtfeldt's ability to reason through certain issues and form working alliances with others. According to Hannappel, Widtfeldt can understand the disciplinary actions against him and can complete a plan to modify his behavior so that there is a much greater chance that the problems will not reoccur.

After a hearing, the referee found that the pleadings contained "irrelevant, immaterial and sometimes scandalous allegations" and that they included "vast quantities of verbiage having nothing whatever to do with the captioned matters." The referee further found that the pleadings were unnecessarily detailed and complex. They took a long time to read and were unnecessarily difficult to interpret, answer, or otherwise respond to. The referee also found, however, that Widtfeldt did not plead the cases with bad intent, but instead did so in an effort to zealously represent his client and rectify problems he saw in government and the judicial branch; a finding that we disagree with. The referee agreed that counseling would benefit Widtfeldt. Widtfeldt is willing to take additional coursework or continuing legal education and work with a mentor. He also agrees to undergo further evaluation and attend followup counseling.

The referee next found that Widtfeldt's actions interfered with the administration of justice and adversely affected his fitness to practice law in violation of Canon 1, DR 1-102(A)(1), (5), and (6), of the Code of Professional Responsibility, which states:

"DR 1-102 Misconduct. (A) A lawyer shall not: (1) Violate a Disciplinary Rule. . . . (5) Engage in conduct that is prejudicial to the administration of justice. . . . (6) Engage in any other conduct that adversely reflects on his or her fitness to practice law." The referee further concluded that Widtfeldt violated his oath of office as an attorney licensed to practice law in Nebraska under Neb. Rev. Stat. § 7-104 (Reissue 1997). The referee recommended that Widtfeldt (1) receive a public reprimand; (2) attend appropriate continuing education involving pretrial litigation; (3) consult for 1 year with a mentor, who will review Widtfeldt's pleadings and filings and file a report at the end of the year; (3) attend further counseling for 1 year; (4) be on probation for 1 year; and (5) pay costs and fees associated with the disciplinary proceeding. No exceptions have been filed.

## ASSIGNMENTS OF ERROR
Neither Widtfeldt nor the Counsel for Discipline takes exception to the factual findings of the referee.

## STANDARD OF REVIEW
A proceeding to discipline an attorney is a trial de novo on the record, in which the Nebraska Supreme Court reaches a conclusion independent of the findings of the referee. *State ex rel. Counsel for Dis. v. Janousek*, 267 Neb. 328, 674 N.W.2d 464 (2004).

## ANALYSIS
Because neither party has taken exception to the referee's factual findings, the sole issue is the appropriate discipline to be imposed. When no exceptions to the referee's findings of fact are filed by either party in a disciplinary proceeding, the court may, at its discretion, adopt the findings of the referee as final and conclusive. *Id.*

To sustain a charge in a disciplinary proceeding against an attorney, the charge must be established by clear and convincing evidence. *Id.* Based on our review of the record and the undisputed findings of the referee, we determine that the facts have been established by clear and convincing evidence. Based on that evidence, we conclude that Widtfeldt has violated DR 1-102(A)(1), (5), and (6), as well as the attorney's oath required by § 7-104.

 The basic issues in a disciplinary proceeding against a lawyer are whether discipline should be imposed and, if so, the type of discipline appropriate under the circumstances. *State ex rel. Counsel for Dis. v. Janousek, supra.* To determine whether and to what extent discipline should be imposed in a lawyer discipline proceeding, we consider the following factors: (1) the nature of the offense, (2) the need for deterring others, (3) the maintenance of the reputation of the bar as a whole, (4) the protection of the public, (5) the attitude of the offender generally, and (6) the offender's present or future fitness to continue in the practice of law. *Id.*

 Each attorney discipline case must be evaluated individually in light of its particular facts and circumstances. In addition, the propriety of a sanction must be considered with reference to the sanctions imposed in prior similar cases. *Id.*; *State ex rel. NSBA v. Flores*, 261 Neb. 256, 622 N.W.2d 632 (2001). To determine the proper discipline of an attorney, this court considers the attorney's acts both underlying the events of the case and throughout the disciplinary proceeding. *State ex rel. Counsel for Dis. v. Thompson*, 264 Neb. 831, 652 N.W.2d 593 (2002).

Here, the record shows that Widtfeldt has repeatedly filed irrelevant and abusive motions and pleadings. In addition—even while under investigation—his written responses to the Counsel for Discipline included irrelevant and abusive material. Widtfeldt admits that his actions were improper and violated provisions of DR 1-102. He is, however, willing to seek further counseling and education and work with a mentor. And we note that despite his bizarre responses to the Counsel for Discipline, Widtfeldt later sought psychological counseling and was cooperative in the disciplinary process. But we cannot ignore that Hannappel found that personality issues interfere with Widtfeldt's ability to reason through certain issues and form working alliances with others. It is clear that Widtfeldt requires further treatment. Thus, our main concern is fashioning a sanction that serves to protect the public. See *State ex rel. Counsel for Dis. v. Thompson, supra.*

We have said that in cases involving depression as a mitigating factor, a period of mandatory suspension coupled with terms of reinstatement will often be appropriate. *Id.* The suspension is not designed as punishment. Instead, it is meant as a time period in which the respondent can seek treatment without imposing a

danger to his or her clients. Once the respondent can demonstrate that treatment has resulted in a meaningful and sustained recovery, he should then be placed on a period of probation with treatment and practice monitoring components. See *id.*

Although Widtfeldt was not diagnosed with depression, he was found to be in need of psychological treatment. To ensure that Widtfeldt is properly treated before he returns to the practice of law, we disagree with the referee's recommendation of ordering solely probation and instead order a period of indefinite suspension followed by a period of probation of not less than 1 year. Widtfeldt may apply for reinstatement subject to the terms of probation. Upon application for reinstatement, Widtfeldt will have the burden of proving that he is fit to practice law under the terms of his probation. He will need to establish that counseling has resulted in behavioral changes that will allow him to practice law within the disciplinary rules. Such proof shall include a showing that he has continued counseling with a qualified therapist unless he is released from treatment.

Following readmission, Widtfeldt shall be subject to probation for not less than 1 year, which will include a monitor to review his pleadings. The Counsel for Discipline shall serve as the monitor. However, a practicing attorney may be substituted if Widtfeldt and the Counsel for Discipline can agree upon a practicing attorney who is willing to serve. See *State ex rel. Counsel for Dis. v. Thompson, supra.* If a practicing attorney does serve as the monitor, he or she shall not be compensated for his or her duties, but shall be reimbursed by Widtfeldt for actual expenses incurred. *Id.* At the end of the 1-year probationary period, it will be Widtfeldt's burden to show cause why the period of probation should not be extended for an additional year before he is released from probation.

## CONCLUSION

We order that effective immediately, Widtfeldt be indefinitely suspended from the practice of law. He may apply for reinstatement consistent with the terms outlined above. Following reinstatement, he shall be subject to a term of probation for not less than 1 year, consistent with the terms outlined above. Widtfeldt shall comply with Neb. Ct. R. of Discipline 16 (rev. 2004), and

upon failure to do so, he shall be subject to punishment for contempt of this court. In addition, Widtfeldt is directed to pay costs and expenses in accordance with Neb. Rev. Stat. §§ 7-114 and 7-115 (Reissue 1997) and Neb. Ct. R. of Discipline 23(B) (rev. 2001).

JUDGMENT OF SUSPENSION AND PROBATION.

STEPHAN, J., not participating.