STATE OF NEBRASKA EX REL. COUNSEL FOR DISCIPLINE OF THE NEBRASKA SUPREME COURT, RELATOR, V. BAIBA D. SIMMONS, RESPONDENT.

703 N.W.2d 598

Filed September 23, 2005. No. S-04-1442.

430

John W. Steele, Assistant Counsel for Discipline, for relator.

No appearance for respondent.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

PER CURIAM.

## PROCEDURAL HISTORY

On December 22, 2004, formal charges containing one count were filed by the office of the Counsel for Discipline of the Nebraska Supreme Court, relator, against Baiba D. Simmons, respondent. Respondent's answer disputed certain of the allegations. A referee was appointed. On April 13, 2005, the referee's hearing was held on the charges. Respondent did not appear and was not represented by counsel at the hearing. Two witnesses testified, and 20 exhibits were admitted into evidence.

The referee filed a report on April 27, 2005. With respect to the charges, the referee concluded that respondent's conduct had breached the following disciplinary rules of the Code of Professional Responsibility: Canon 1, DR 1-102(A)(1) (violating disciplinary rule); DR 1-102(A)(4) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation); Canon 9, DR 9-102(B)(3) (failing to maintain client account records); and DR 9-102(B)(4) (failing to return client property as requested), as well as her oath of office as an attorney, Neb. Rev. Stat. § 7-104 (Reissue 1997). With respect to the discipline to be imposed, the referee recommended that respondent be disbarred from the practice of law. Neither relator nor respondent filed exceptions to the referee's report.

On May 11, 2005, relator filed a motion for judgment on the pleadings under Neb. Ct. R. of Discipline 10(L) (rev. 2003). Respondent did not file a response to relator's motion. On June 8, we granted the motion for judgment on the pleadings and set

the matter for briefing and oral argument on the issue of the appropriate discipline.

## FACTUAL BACKGROUND

Respondent was admitted to the practice of law in the State of Nebraska on December 13, 1989. She was engaged in the private practice of law in Lancaster County, Nebraska. On March 31, 2000, in an unrelated disciplinary proceeding, this court indefinitely suspended respondent from the practice of law in the State of Nebraska. *State ex rel. NSBA v. Simmons*, 259 Neb. 120, 608 N.W.2d 174 (2000). Respondent has not sought reinstatement following her suspension.

As stated above, the referee's hearing was held on April 13, 2005, in the instant case. The substance of the referee's report and findings made following that hearing may be summarized as follows: Helen Ulrich hired respondent to represent her in several different legal matters, including certain real estate transactions. According to the referee's report, Ulrich suffers from a mental disorder, possibly schizophrenia. One of the real estate transactions in which respondent represented Ulrich involved the sale of Ulrich's condominium. After the condominium was sold, Ulrich moved to Tabitha Village in Lincoln.

According to the referee's report, on April 1, 1996, Ulrich received a check as payee from State Title Services, Inc., in the amount of $47,785.88, representing the proceeds from the sale of the condominium (sale proceeds). During the referee's hearing, Ulrich testified that she endorsed the check for the sale proceeds over to respondent for deposit in respondent's attorney trust account. A copy of the escrow check, signed by Ulrich, endorsed over to respondent's trust account, and bearing the stamp of the National Bank of Commerce was introduced into evidence during the referee hearing. Ulrich testified that she endorsed the sale proceeds check over to respondent because she was concerned certain family members might try to take advantage of her with regard to the sale proceeds. Ulrich testified that respondent agreed to manage Ulrich's money for her.

Sometime prior to September 2003, respondent moved to Florida. The referee found that Ulrich, who was also a personal friend of respondent, visited respondent in Florida in September

and discussed the sale proceeds with respondent. Ulrich testified that respondent told her that respondent was still holding the money but did not inform Ulrich where the money was being held.

According to the referee's report, upon Ulrich's return from Florida, she retained an attorney practicing in Lincoln, Nebraska (Lincoln attorney), to represent her with regard to certain tax matters and to help her reclaim the sale proceeds from respondent. On November 18, 2003, the Lincoln attorney sent respondent a letter to advise her of his representation of Ulrich and to request the return of the sale proceeds. The referee notes in his report that "[c]oincidentally," on November 18, respondent sent a letter to Ulrich. In her November 18 letter, respondent admitted that she was in possession of a "large sum of money" belonging to Ulrich, writing:

It occurred to me finally, that - after our last conversation - you must be worried about your money. I am deeply regretful that in all of our personal strife, I did not let you know that I have every intent of keeping it safe and secure - for you or yours. . . .

. . . .

I am concerned about any transfer right now because of Tabitha [Village]. If I dumped a large sum of money in your account, I think you would have a lot to explain, if they agreed to keep you there. They could recalculate on the basis of this income. That would mean that since you were at Tabitha you would pay the difference between what you paid and what you have in the bank. However if you want to risk this, we'll do it. If I get accused of fraud so will you. I deeply regret that we are both in this position but we are both adults. Let me know if you want changes made to the present arrangement and how you want them.

In the referee's report, he found that respondent did not reply to the Lincoln attorney's letter. However, in a letter addressed to Ulrich and dated November 24, 2003, she wrote the following: "I was very unhappy to receive a letter that indicated how much you mistrust me. I wish you had talked to me instead of this." Ulrich testified that in addition to the November 24 letter, respondent telephoned Ulrich on several occasions following November 18. The referee found that with the use of a caller identification

device, Ulrich was able to know it was respondent calling, and that she chose not to answer any of respondent's calls.

According to the referee's report, on December 8, 2003, the Lincoln attorney again wrote respondent concerning the sale proceeds. The Lincoln attorney also directed respondent not to contact Ulrich directly. In a letter to the Lincoln attorney dated December 17, 2003, respondent wrote that she had been in contact with several people who knew Ulrich and that not one of these persons could tell respondent that Ulrich was behaving normally. In her letter, respondent refused to do anything until she "ha[d] an indication from [Ulrich's] psychiatrist that [Ulrich] is functioning normally and that she has the capacity to make serious judgment calls."

The referee's report states that on January 7, 2004, the Lincoln attorney again wrote to respondent and repeated his demand that respondent return the sale proceeds to Ulrich. In his letter, the Lincoln attorney indicated that he was including a copy of a letter from Ulrich's therapist confirming that Ulrich was capable of handling her own affairs. The referee found that the January 7 letter was returned "ostensibly unopened."

According to the referee's report, on January 21, 2004, the Lincoln attorney contacted the Lincoln Police Department concerning respondent's refusal to return the sale proceeds to Ulrich. Investigator Steven Niemeyer interviewed the Lincoln attorney and Ulrich and reviewed correspondence between them and respondent. Thereafter, Niemeyer telephoned respondent and discussed with her the sale proceeds. Niemeyer tape-recorded his conversation with respondent, and a cassette tape recording of the conversation, together with a transcription of the recording, were admitted into evidence during the referee's hearing.

According to the record, at the start of the telephone conversation, Niemeyer introduced himself to respondent and advised her he was calling with regard to Ulrich, to which respondent replied, "Oh my God." Throughout the telephone conversation, respondent repeatedly denied having possession of the sale proceeds, but admitted that she once possessed the money and had deposited it into her trust account at the National Bank of Commerce. Respondent claimed that over the years, she had returned the money to Ulrich as cash transactions "because we

couldn't do anything otherwise because of Tabitha [Village]." During their telephone conversation, Niemeyer in effect asked respondent to explain the apparent inconsistency between her November 18, 2003, letter to Ulrich, in which she indicated she was holding a large sum of money for Ulrich, with her contention during the telephone interview that she was not holding any money for Ulrich. The referee found that respondent avoided answering the question and did not take the opportunity to explain the situation.

As noted above, based upon the record, the referee found by clear and convincing evidence that respondent had violated DR 1-102(A)(1) and (4) and DR 9-102(B)(3) and (4), as well as her oath of office as an attorney. The referee also found that "[t]here are absolutely no mitigating circumstances in this matter." Although not specifically identified by the referee as an aggravating factor, the referee acknowledged respondent's prior disciplinary proceeding that had resulted in her suspension from the practice of law, noting that "[r]espondent is not in good standing . . . ." With respect to the sanction that ought to be imposed for the foregoing violations, and considering the lack of mitigating factors in the case, the referee recommended that respondent be disbarred from the practice of law.

## ASSIGNMENT OF ERROR

As noted above, neither relator nor respondent filed exceptions to the referee's report, and relator's motion for judgment on the pleadings was sustained on June 8, 2005. The sole issue before this court is the determination of appropriate discipline.

## STANDARD OF REVIEW

■ A proceeding to discipline an attorney is a trial de novo on the record, in which the Nebraska Supreme Court reaches a conclusion independent of the findings of the referee. *State ex rel. Counsel for Dis. v. Widtfeldt*, 269 Neb. 289, 691 N.W.2d 531 (2005).

## ANALYSIS

*Findings.*

■ When no exceptions are filed, the Nebraska Supreme Court may consider the referee's findings final and conclusive.

See *State ex rel. Counsel for Dis. v. Widtfeldt, supra.* Based on the record and the undisputed findings of the referee, we find that the above-referenced facts have been established by clear and convincing evidence. Based on the foregoing evidence, we conclude that by virtue of respondent's conduct, respondent has violated DR 1-102(A)(1) and (4); DR 9-102(B)(3) and (4); and her oath of office as an attorney, see § 7-104.

*Factors Affecting Discipline to Be Imposed.*
■ We have stated that "[t]he basic issues in a disciplinary proceeding against a lawyer are whether discipline should be imposed and, if so, the type of discipline appropriate under the circumstances." *State ex rel. Counsel for Dis. v. Widtfeldt,* 269 Neb. at 293, 691 N.W.2d at 535. Neb. Ct. R. of Discipline 4 (rev. 2004) provides that the following may be considered as discipline for attorney misconduct:

(A) Misconduct shall be grounds for:

(1) Disbarment by the Court; or

(2) Suspension by the Court; or

(3) Probation by the Court in lieu of or subsequent to suspension, on such terms as the Court may designate; or

(4) Censure and reprimand by the Court; or

(5) Temporary suspension by the Court; or

(6) Private reprimand by the Committee on Inquiry or Disciplinary Review Board.

(B) The Court may, in its discretion, impose one or more of the disciplinary sanctions set forth above.

See, also, rule 10(N).
■ With respect to the imposition of attorney discipline in an individual case, we have stated that "[e]ach attorney discipline case must be evaluated individually in light of its particular facts and circumstances. In addition, the propriety of a sanction must be considered with reference to the sanctions imposed in prior similar cases." *State ex rel. Counsel for Dis. v. Widtfeldt,* 269 Neb. at 293, 691 N.W.2d at 535. For purposes of determining the proper discipline of an attorney, this court considers the attorney's acts both underlying the events of the case and throughout the proceeding. *State ex rel. Counsel for Dis. v. Rokahr,* 267 Neb. 436, 675 N.W.2d 117 (2004).

■ To determine whether and to what extent discipline should be imposed in a lawyer discipline proceeding, this court considers the following factors: (1) the nature of the offense, (2) the need for deterring others, (3) the maintenance of the reputation of the bar as a whole, (4) the protection of the public, (5) the attitude of the offender generally, and (6) the offender's present or future fitness to continue in the practice of law. *State ex rel. Counsel for Dis. v. Widtfeldt, supra.* We have noted that the determination of appropriate discipline to be imposed on an attorney requires consideration of any aggravating or mitigating factors. *State ex rel. Special Counsel for Dis. v. Fellman,* 267 Neb. 838, 678 N.W.2d 491 (2004).

*Discipline to Be Imposed.*

The evidence in the present case establishes, among other facts, that Ulrich endorsed the check for the sale proceeds over to respondent and that respondent admitted depositing that check in her attorney trust account. The record contains respondent's November 18, 2003, letter to Ulrich, in which respondent admitted that she was still holding a large sum of money for Ulrich, and was "keeping it safe and secure." Despite these admissions, when asked by her former client to return the sale proceeds, respondent failed to return the proceeds and, indeed, told Niemeyer that she had returned Ulrich's money to her as cash transactions over the years. With regard to respondent's actions, the referee in his report concluded the following:

> Respondent was deceptive with . . . Niemeyer when he asked her directly whether she still had . . . Ulrich's money. Respondent was non-responsive to [the Lincoln attorney] when he asked respondent to return . . . Ulrich's money and provide an accounting. . . . Ulrich still does not have her money. The unavoidable conclusion is that . . . Ulrich will never see her money again. Respondent either has the money with the intent of keeping it for herself, or she spent it. . . .
>
> The only relevant facts for this inquiry, however, are the fact that . . . Ulrich does not have her money, and the admitted fact that respondent was given the money to hold in trust for . . . Ulrich during the period when [respondent]

was authorized to practice law in Nebraska. The conclusion that respondent [retained] Ulrich's money to [respondent's] own benefit is the only reasonable one to be drawn from the evidence. . . . There is absolutely no question that respondent should be disbarred.

We agree with the referee's conclusions that respondent's statements to Ulrich and Niemeyer cannot both be true and that the record reflects that respondent has engaged in a course of action involving dishonesty, fraud, deceit, ·or misrepresentation with regard to the sale proceeds which respondent had deposited into her attorney trust account on behalf of Ulrich.

■ This court has repeatedly stated that absent mitigating circumstances, the appropriate discipline in cases of misappropriation or commingling of client funds is disbarment. See, *State ex rel. Counsel for Dis. v. Rasmussen*, 266 Neb. 100, 662 N.W.2d 556 (2003); *State ex rel. NSBA v. Howze*, 260 Neb. 547, 618 N.W.2d 663 (2000); *State ex rel. NSBA v. Malcom*, 252 Neb. 263, 561 N.W.2d 237 (1997); *State ex rel. NSBA v. Gregory*, 251 Neb. 41, 554 N.W.2d 422 (1996).

The referee concluded, and we agree, that there are no mitigating factors present in the instant case. We further agree with the referee's conclusions that

[r]espondent preyed on a mentally and physically impaired person. . . .

Respondent has expressed no attitude of regret or remorse. Respondent has not cooperated with [relator] or [the] Referee. She has provided no service to the legal community. There is nothing negligent about her conduct. Instead, her conduct evinces deceit and wrongful intent. She demonstrates no competence as a lawyer, and has no present fitness for the practice of law.

Moreover, we note the presence of at least one aggravating factor. Respondent is currently under an indefinite suspension of her license to practice law as a result of a prior disciplinary proceeding before this court. See *State ex rel. NSBA v. Simmons*, 259 Neb. 120, 608 N.W.2d 174 (2000).

We have considered the record, the findings which have been established by clear and convincing evidence, and the applicable law. Upon due consideration, the court finds that respondent

should be and is hereby disbarred from the practice of law effective immediately.

## CONCLUSION

We find by clear and convincing evidence that respondent violated DR 1-102(A)(1) and (4), DR 9-102(B)(3) and (4), and her oath of office as an attorney. It is the judgment of this court that respondent should be and is hereby disbarred from the practice of law, effective immediately. Respondent shall forthwith comply with Neb. Ct. R. of Discipline 16 (rev. 2004), and upon failure to do so, she shall be subject to punishment for contempt of this court. Respondent is directed to pay costs and expenses in accordance with Neb. Rev. Stat. §§ 7-114 and 7-115 (Reissue 1997), rule 10(P), and Neb. Ct. R. of Discipline 23(B) (rev. 2001) within 60 days after an order imposing costs and expenses, if any, is entered by the court.

JUDGMENT OF DISBARMENT.