STATE OF NEBRASKA EX REL. COUNSEL FOR DISCIPLINE
OF THE NEBRASKA SUPREME COURT, RELATOR, V.
THOMAS M. PETERSEN, RESPONDENT.

710 N.W.2d 646

Filed March 10, 2006.    No. S-04-1173.

John W. Steele, Assistant Counsel for Discipline, for relator.

Jeffrey A. Silver for respondent.

Hendry, C.J., Connolly, Gerrard, Stephan, McCormack, and Miller-Lerman, JJ.

Per Curiam.

The issue presented in this attorney disciplinary proceeding is what sanction should be imposed on the respondent, Thomas M. Petersen, for his serial neglect of client matters. For the reasons that follow, we impose an indefinite suspension from the practice of law with no possibility of reinstatement prior to February 1, 2008.

## BACKGROUND

There were no exceptions filed to the referee's report in this case. When no exceptions to the referee's findings of fact are filed by either party in a disciplinary proceeding, the court may, at its discretion, adopt the findings of the referee as final and conclusive. *State ex rel. Counsel for Dis. v. Mills*, 267 Neb. 57, 671 N.W.2d 765 (2003). We must also consider the circumstances of two prior disciplinary proceedings involving Petersen. Thus, the following facts are found in either the referee's report to this case; *State ex rel. Counsel for Dis. v. Petersen*, 264 Neb. 790, 652 N.W.2d 91 (2002) (*Petersen I*); or *State ex rel. Counsel for Dis. v. Petersen*, 267 Neb. 176, 672 N.W.2d 637 (2004) (*Petersen II*).

### Jennifer Weeks (*Petersen I*)

Petersen was admitted to the practice of law in Nebraska on April 14, 1995. In 1998, Petersen was retained by Jennifer Weeks to represent her in a personal injury claim arising from a motor vehicle accident. On July 5, 2000, the Counsel for Discipline received the complaint from Weeks that gave rise to our opinion in *Petersen I*. Generally, Weeks complained that Petersen had negotiated a settlement on Weeks' behalf, but had retained settlement funds to which he was not entitled. Petersen was charged with violation of a disciplinary rule; conduct involving dishonesty, fraud, deceit, or misrepresentation; and knowingly making a false statement of law or fact. Although the evidence in that case showed that Petersen failed to supervise and control the activities of his employees and that his office management was sloppy, Petersen had not been charged with that conduct. Thus,

we dismissed the charges against Petersen. Our decision was entered on October 18, 2002. See *Petersen I.*

## JUDITH STARK

In June 2000, Judith Stark retained Petersen to represent her in a claim arising out of a motor vehicle accident that occurred on September 8, 1998. Petersen and his associates began working on the case. In February 2001, Stark sent a letter to Petersen advising him about the state of her health, explaining that her insurance company was contacting her, and asking for advice. No one from Petersen's firm replied to Stark's letter or returned her telephone calls. In June 2001, one of Petersen's associates sent Stark a "Personal Impact Questionnaire," soliciting information from Stark to be incorporated into a demand letter. Stark completed the questionnaire. No member of Petersen's firm ever contacted the driver of the other vehicle involved in Stark's accident or the owner of the vehicle. No member of Petersen's firm contacted Stark's insurance company regarding underinsured or uninsured motorist coverage. No specific demand was ever made of the other driver's insurance company.

On February 28, 2002, Petersen claims to have sent a letter of disengagement to Stark; Stark claims not to have received it. On October 10, Petersen was contacted at his office, and he sent another letter to Stark, enclosing a copy of the letter dated February 28, 2002. Petersen advised Stark that the statute of limitations had elapsed on her claim, but that he would try to secure a $5,500 settlement offer that had been proposed earlier by the other driver's insurer. Petersen advised Stark that he was acting out of courtesy, not "re-accepting" her case.

Nonetheless, Petersen later filed suit against the insurer in the Douglas County District Court seeking to enforce the settlement offer. The insurer sent discovery requests to Petersen to which Petersen did not respond, despite the filing of motions to compel. The case was dismissed on August 11, 2003, as a sanction for failing to respond to discovery. In December, Petersen paid Stark $5,000 to resolve her claim against him and his firm. Stark believed that the funds came from the insurer, and the respondent admitted that he may have contributed to that misunderstanding, although he said he did not intend to mislead her.

## MICHAEL COLE

In October 2002, Petersen was retained to represent Michael Cole in his appeal of a state court criminal conviction. Petersen had not represented Cole at trial. On October 21, 2002 (3 days after we entered our decision in *Petersen I*), Petersen perfected Cole's appeal. The initial brief was due on January 9, 2003. On January 8, Petersen requested an extension of brief date until February 10, which request was granted. On February 12, the Clerk of the Nebraska Supreme Court and Court of Appeals (Clerk's Office) sent Petersen a notice of default. On February 19, Petersen filed another motion to extend the brief date, and the brief date was extended to April 1. On April 14, the Clerk's Office sent another notice of default and advised Petersen that the appeal would be dismissed if the brief were not filed within 10 days. Petersen finally replied on April 29, with another motion to extend brief date. The brief date was extended until May 19. On June 10, the Clerk's Office sent another notice of default, and on June 27, the appeal was dismissed for failure to file briefs. The Court of Appeals' mandate issued on July 29, 2003. On August 1, Petersen filed a motion to recall the mandate, which was overruled on August 7.

Petersen had been paid $10,000 to prosecute Cole's appeal. Some of the money has been refunded.

## LEONEL GARCIA-GARIBAY (*PETERSEN II*)

On April 28, 2003, the U.S. Court of Appeals for the Eighth Circuit entered an order for Petersen to show cause why he should not be disciplined for failing to file the brief of Leonel Garcia-Garibay, whom Petersen was representing on appeal in that court. The brief had been due on March 21, but had not been filed. A similar order to show cause, in the same case, was filed on May 22. Petersen filed a response on May 22, claiming that Petersen's former secretary had been "intentionally attempting to harm [him] and [his] business" and intentionally hiding mail and failing to forward messages or calendar important items. Petersen claimed that his secretary had been to blame for failing to file the brief. Petersen sought a 60-day extension of brief date. The brief date was extended to July 14. On July 25, the court entered an order relieving Petersen of his

appointment for failure to file a timely brief. On the same date, the court entered an order suspending Petersen from practice before the court for 2 years.

On August 4, 2003, Petersen filed a motion for reconsideration of his suspension. In the motion, Petersen claimed that on May 30, he had fired two of his support staff and his only associate and that since then, he had associated with other attorneys in an effort to reduce his caseload. Petersen attached a copy of a motion to extend brief date that he claimed he had filed before the brief was due but "which was apparently not received by the Court." Petersen also asserted that his "longtime friend and confidant" had been seriously ill "involving some strange injury that periodically caused paralysis of the upper extremities, confusion and strange behavior" and that Petersen had been preoccupied by concern, time for doctor's visits, and other support, to the detriment of his legal practice. The motion was overruled on August 6.

On August 8, 2003, Petersen filed a motion for a stay and expedited hearing, seeking an opportunity to apologize to the court and demonstrate that the occurrence was inadvertent. Petersen stated that he had reordered and improved his practice "to ensure nothing remotely similar happens in the future." Petersen explained that the damage from the court's suspension to him, his clients, and his employees would be irreparable. A hearing was held on September 11, and on September 17, the court granted Petersen's motion for further reconsideration and modified the suspension to a period of 30 days from the date of the order.

On January 2, 2004, we granted Counsel for Discipline's motion for reciprocal discipline and suspended Petersen for 30 days. See *Petersen II*.

### BRIAN LACY

On October 21, 2002 (3 days after our decision in *Petersen I*), Petersen filed a declaratory judgment action in the U.S. District Court for the District of Nebraska on behalf of Brian Lacy, arising out of Lacy's claim against his underinsured motorist coverage insurer. The insurer served discovery on Petersen in May and June 2003. On July 23, the court scheduled a scheduling conference for November 14 and notified Petersen of the conference.

On October 17, 2003 (a month *after* the Eighth Circuit granted Petersen's motion to reconsider his suspension before that court), the insurer filed a motion to compel responses to its previous discovery. Petersen did not respond to the motion to compel. On November 10, the court granted the motion to compel and entered an order to show cause why sanctions should not be entered if the discovery responses were not served by November 24. On November 18, the scheduling conference was rescheduled for December 19. Petersen did not comply with the order to show cause and did not attend the scheduling conference. Sometime thereafter, Petersen called the magistrate judge's chambers to apologize. On December 23, the insurer filed an additional motion to compel. On January 2, 2004, as previously noted, we suspended Petersen for 30 days. See *Petersen II*.

On January 7, 2004, the magistrate judge granted the insurer's motion for attorney fees resulting from the motion to compel and entered an order to show cause why Petersen should not be held in contempt for failing to attend the scheduling conference. The scheduling conference was rescheduled for January 23. Petersen filed a written notice of his suspension with the Clerk of the U.S. District Court on January 13 and did not attend the scheduling conference. The magistrate judge recommended that as sanctions for failing to comply with discovery orders or attend conferences, Petersen be ordered to pay attorney fees and the lawsuits be dismissed. Petersen's successor counsel avoided dismissal of the lawsuits; Petersen was sanctioned $891 in attorney fees, which have been paid.

### EVIDENCE OF MITIGATING CIRCUMSTANCES

Petersen testified that the "overwhelming situation" that he had was that when he graduated law school, he wanted a big firm. Petersen said that he chose some "poor people" to run his firm with him, and "it all sort of came to a head about the time that [he] started getting Bar complaints, and [he] was overwhelmed with cases, several hundred of them at the time, and [he] had some employees that [he] had to let go." Petersen said that he "tried as best [he] could to discharge many of them, but in some cases the damage had already been done." Petersen admitted that

he accepted some cases in areas of the law in which he did not have the appropriate expertise.

Petersen testified that since the complaints had come forward, he had discharged any type of case other than criminal defense and had reduced his caseload to less than 20 cases. Petersen also testified that in response to his first suspension, he suffered from depression for a while and that "there was [sic] some indications of [his] substance abuse, alcohol and so forth, and [he] was starting to drink more." Petersen testified that he had addressed those issues through Alcoholics Anonymous (AA) and the Nebraska Lawyers Assistance Program, stating: "I go to a meeting a day. I go to — I have sponsors. I have somebody that I address on a daily basis." Petersen also testified that he was seeing a counselor. Petersen stated that he had a supervising attorney through this court who assisted him when necessary and that he was also assisted by judges and lawyers he encountered through his AA meetings. Petersen admitted that he had never gone under a formal contract with the Nebraska Lawyers Assistance Program, however, because he "wasn't going to go to formal treatment."

At oral argument, Counsel for Discipline offered evidence that Petersen had been accepted into a "highly structured sober living, modified social model, alcohol and drug free program" in California. The evidence indicated that Petersen had signed a 90-day contract, but had verbally committed to a 6-month to 1-year program. Counsel for Petersen did not object to the evidence, and this court accepted it into the record. See, *State ex rel. Counsel for Dis. v. Jones*, 270 Neb. 471, 704 N.W.2d 216 (2005) (proceeding to discipline attorney is trial de novo on record); *Prucha v. Kahlandt*, 260 Neb. 366, 618 N.W.2d 399 (2000) (appellate court may consider agreed circumstances presented to it in brief or argument).

## REFEREE'S RECOMMENDATIONS

The referee found, pursuant to Petersen's admissions, that Petersen's conduct constituted violations of Canon 1, DR 1-102(A)(1) (violation of disciplinary rules) and DR 1-102(A)(5) (engaging in conduct prejudicial to administration of justice); Canon 6, DR 6-101(A)(3) (neglecting legal

matter entrusted to him); Canon 6, DR 6-102(A) (attempting to exonerate himself from or limit his liability to client for his personal malpractice); and Canon 7, DR 7-101(A)(2) (failing to carry out contract of employment entered into with client for professional services), of the Code of Professional Responsibility. The referee recommended a suspension from the practice of law for 180 days. The referee disagreed with the parties' recommendation that Petersen be given credit for the period of his prior suspension. The referee further expressed concern with Petersen's failure to obtain "formal treatment" for substance abuse. The referee recommended that reinstatement to the practice of law be conditioned on proof of fitness to practice law and that Petersen be placed on probation for 2 years and be required to engage an attorney to monitor his practice during his probation.

## EXCEPTIONS

As previously noted, there were no exceptions filed to the referee's report in this case. When no exceptions are filed, the Nebraska Supreme Court may consider the referee's findings final and conclusive. *State ex rel. Counsel for Dis. v. Simmons*, 270 Neb. 429, 703 N.W.2d 598 (2005). Thus, the only issue in this case is the appropriate discipline to be imposed.

## STANDARD OF REVIEW

A proceeding to discipline an attorney is a trial de novo on the record, in which the Nebraska Supreme Court reaches a conclusion independent of the findings of the referee. *Id.*

## ANALYSIS

Under existing case law, the Nebraska Supreme Court is limited in its review to examining only those items to which the parties have taken exception. *State ex rel. Counsel for Dis. v. Apker*, 263 Neb. 741, 642 N.W.2d 162 (2002). Under Neb. Ct. R. of Discipline 10(L) (rev. 2005), the Nebraska Supreme Court may, in its discretion, consider the referee's findings as final and conclusive. *Id.* Accordingly, we find, on our de novo examination of the record, clear and convincing evidence that Petersen's conduct, set forth above, violated DR 1-102(A)(1) and (5), DR 6-101(A)(3), DR 6-102(A), and DR 7-101(A)(2).

We note that all of the conduct at issue in this case occurred prior to the September 1, 2005, effective date of the Nebraska Rules of Professional Conduct and is, thus, governed by the now-superseded Code of Professional Responsibility.

Violation of a disciplinary rule is a ground for discipline. *State ex rel. Counsel for Dis. v. James*, 267 Neb. 186, 673 N.W.2d 214 (2004). To determine whether and to what extent discipline should be imposed in a lawyer discipline proceeding, the Nebraska Supreme Court considers the following factors: (1) the nature of the offense, (2) the need for deterring others, (3) the maintenance of the reputation of the bar as a whole, (4) the protection of the public, (5) the attitude of the respondent generally, and (6) the respondent's present or future fitness to continue in the practice of law. *State ex rel. Counsel for Dis. v. Sutton*, 269 Neb. 640, 694 N.W.2d 647 (2005).

In this case, our primary concern is the protection of the public. Petersen's repeated neglect of client matters has obviously been injurious to those who have trusted him with their legal problems. While Petersen's after-the-fact explanations of his conduct have changed from instance to instance, Petersen's record shows a clear pattern of neglect. The protection of the public demands that Petersen not again abuse the trust of a client.

Nor are we persuaded that Petersen's recent revelation of a substance abuse problem is a sufficient mitigating circumstance to avoid a lengthy suspension. Petersen's testimony before the referee indicated that his problem with substance abuse began after his first suspension from the practice of law. There is no evidence in the record to indicate otherwise. But most of the instances of neglect contained in this record occurred before that suspension. In other words, based on our de novo review of this record, we cannot conclude that Petersen's substance abuse was a cause of these instances of neglect. Rather, the record indicates that Petersen has repeatedly and consistently neglected client matters for a period of years, however inconsistent he may have been in explaining his behavior.

An attorney's admission of responsibility for his or her actions reflects positively upon his or her attitude and character and is to be considered in determining the appropriate discipline. *State ex rel. Counsel for Dis. v. Mills*, 267 Neb. 57, 671

N.W.2d 765 (2003). Petersen's admissions of responsibility for his conduct have come only when faced with discipline, and even when discipline has been imposed, those sanctions have not prevented further misconduct. In fact, in some cases, new misconduct has arisen only days after the resolution of a previous disciplinary proceeding. It is one thing to admit responsibility for past actions, but quite another to display that responsibility by modifying behavior. This record displays some of the former, but none of the latter. To the contrary, while Petersen claims to be addressing his substance abuse problem, the record also evidences many other instances in which Petersen has claimed to have addressed the issues leading to his misconduct, only to have new issues arise.

The other dispositive factor is Petersen's present fitness to practice law, which is not demonstrated in the record before us. Petersen has professed to have turned over new leaves before. It is the sincere hope of this court that Petersen is able to solve the problems that have afflicted him, whatever they may be. But unlike past incidents, in this case, Petersen will be required to demonstrate that he has addressed those problems before he is again placed in a position of trust. We accept the evidence that Petersen is seeking treatment, but we are unwilling to accept another of Petersen's assurances, that nothing similar will happen again, without proof to that effect.

We conclude protection of the public demands that Petersen be suspended from the practice of law for an indefinite period, with no possibility of reinstatement prior to February 1, 2008. Compare *State ex rel. NSBA v. Aupperle*, 256 Neb. 953, 594 N.W.2d 602 (1999). Upon application for reinstatement, Petersen shall have the burden of proving that he has not practiced law during the period of suspension and that he has met the requirements of Neb. Ct. R. of Discipline 16 (rev. 2004). In addition, reinstatement shall be conditioned upon (1) the payment of all costs of this action, which are hereby taxed to Petersen; (2) a showing by independent third-party proof that Petersen has continued active participation in a recovery program and has maintained abstinence from the use of alcohol during the period of suspension; and (3) the submission by Petersen and approval by this court of a probation plan, to be in effect for a period of 2

years following reinstatement, whereby Petersen's recovery program, his office management, and his compliance with the Nebraska Rules of Professional Conduct would be monitored by the Nebraska Lawyers Assistance Program and the Counsel for Discipline. Failure to comply with the terms of the probation plan would constitute grounds for further disciplinary action.

We are aware that new formal charges have been filed against Petersen, based upon other allegations of serious misconduct that have not been discussed in this opinion. Those charges have not been considered in our deliberations in the instant case, and will proceed and be resolved separately.

JUDGMENT OF SUSPENSION.

WRIGHT, J., not participating.