STATE OF NEBRASKA EX REL. COUNSEL FOR DISCIPLINE
OF THE NEBRASKA SUPREME COURT, RELATOR,
V. ROBERT H. BEACH, RESPONDENT.

722 N.W.2d 30

Filed September 29, 2006.   Nos. S-04-1399, S-05-1116.

Kent L. Frobish, Assistant Counsel for Discipline, for relator.

No appearance for respondent.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

PER CURIAM.

These two attorney disciplinary actions involve separate formal charges filed by the office of the Counsel for Discipline of the Nebraska Supreme Court, relator, against respondent Robert H. Beach. In each case, a hearing was held before a referee and neither party filed exceptions to the referee's report. We granted the relator's motion for judgment in each case and ordered briefing and oral argument on the limited issue of sanctions. The cases were briefed and argued separately. We now consider the issue of what discipline should be imposed.

## FACTS

### BACKGROUND

Respondent was admitted to the practice of law in the State of Nebraska on June 22, 1964. In previous disciplinary proceedings, he received two private reprimands for misconduct similar in nature to that which is the subject of these cases. The first private reprimand was issued on February 24, 1991, and the second on March 26, 1996.

### CASE NO. S-04-1399: FORMAL CHARGES

Formal charges were filed on December 13, 2004. Respondent filed an answer admitting some allegations, denying others, and requesting dismissal of the formal charges. A referee appointed by this court conducted a hearing on April 12, 2005, and filed a report on May 26. We summarize the findings and recommendations of the referee.

At all relevant times, respondent was engaged in private practice in Omaha, Nebraska. In March 2004, respondent met J.N., who was a waitress at a truckstop near her home in Brownville, Nebraska. J.N. was 21 years old and married. In March or April, J.N. hired respondent to represent her in a felony probation revocation case in Nemaha County, Nebraska. Thereafter, respondent sent three letters to the Nemaha County Attorney regarding the case. Respondent also requested that the county attorney initiate mental health proceedings against J.N., but the county attorney took no action in this regard. On August 12, respondent sent a fourth letter to the county attorney, stating in part:

> My client lives a block from the Brownville bridge and we will all feel rotten if she jumps. She informed her stupid

husband a year ago that she was leaving him and he proceeded to get drunk and jumped off the bridge into the Mo. River. Unfortunately for [J.N.] and county authorities he survived.

Respondent sent this letter without the knowledge or consent of his client.

On August 18, 2004, also without the knowledge or consent of J.N., respondent sent a letter to J.N.'s husband in which he wrote: "I believe [J.N.] at long last realizes what a useless piece of shit you are and her worst enemy. . . . Try the Brownville Bridge again - - face first." On August 25, without any request from his client, respondent sent her a divorce petition with directions to sign it. In his transmittal letter, he stated in part:

> Deep in your heart, you know that [your husband] is bad for you and always has been. You also know that for you to have a good life this sub human has to go. . . . He is scum and always will be. Honey, you can have a future. Let's make it a good future. [The judge assigned to the probation revocation case] will know you are sincere if you dump your hubby.

Respondent's representation of J.N. was terminated on August 26.

Respondent received notice on August 28, 2004, that a grievance had been filed with the relator regarding his August 12 and 18 letters. Respondent then sent a letter to J.N. stating: "Your dip shit husband did, in fact, file a grievance with the Counsel for Discipline. . . . Not a big deal - just an inconv[en]ience."

While J.N. was on probation and ordered not to consume alcohol, respondent accompanied her to bars and purchased alcoholic beverages for her. Respondent testified that he was paternalistic and fond of J.N., whom he referred to as his "black sheep daughter." He believed that her husband was bad for her and that breaking the relationship would be good for her well-being and would impress the judge in her probation revocation case. He also believed that J.N. was a danger to herself and should be placed in protective custody.

The referee found that respondent had violated Canon 1, DR 1-102(A)(5) and (6), and his oath of office as an attorney. Noting that respondent had twice previously been sanctioned for

similar conduct, the referee recommended a public reprimand and a 6-month suspension of respondent's license.

## TEMPORARY SUSPENSION

On June 17, 2005, the chairperson of the Committee on Inquiry of the Second Disciplinary District filed an application pursuant to Neb. Ct. R. of Discipline 12 (rev. 2002), requesting this court to temporarily suspend respondent from the practice of law. The application was supported by the affidavit of Kent L. Frobish, Assistant Counsel for Discipline. Frobish averred that after receiving a copy of the referee's report summarized above, respondent sent letters to the president of the Nebraska State Bar Association, an attorney representing J.N., and the Counsel for Discipline which violated Canon 4, DR 4-101B(1), and DR 1-102(A)(5), and adversely reflected on his fitness to practice law in violation of DR 1-102(A)(6). Copies of the letters were attached to the affidavit.

This court entered an order requiring respondent to show cause why his license to practice law should not be temporarily suspended based upon the allegations set forth in the application. In his response, respondent stated that he had "done nothing that will cause serious damage to the public or to the legal profession." Finding this response inadequate, we entered an order on July 13, 2005, temporarily suspending respondent's license to practice law in this state until further order of the court.

## CASE NO. S-05-1116: FORMAL CHARGES

Formal charges were filed on September 19, 2005, alleging essentially the same facts set forth in the application for temporary suspension. Respondent filed an answer admitting some factual allegations, denying others, and asserting affirmative defenses, including an allegation that his statements reflected "strongly held personal opinions, and were made after suffering a stroke which occurred within weeks of receiving [the referee's report and recommendations] in S-04-1399." A second referee appointed by this court conducted a hearing on January 10, 2006, at which hearing respondent did not appear personally or through counsel. On January 19, the referee filed a report including findings of fact and recommendations for disciplinary sanctions, which we summarize here.

On June 1, 2005, respondent sent a letter to the Nebraska State Bar Association requesting a termination of his membership. The letter revealed confidential information about J.N. It also stated that the disciplinary proceeding in case No. S-04-1399 was the "result of a complaint filed by [J.N.], 22, with direction and assistance by a very dangerous woman attorney." It further stated that during the hearing in case No. S-04-1399, "[t]ruth mattered little" to the Assistant Counsel for Discipline and the referee and that it "took about 10 seconds . . . to realize this was going to be a jam job, [respondent's] being the jamee." The letter indicated that copies were sent to "[t]en judges, the Counsel [for Discipline], [the referee], several other lawyers, a few civilians and my pals." Respondent also sent a copy of the letter to the attorney mentioned therein, with a handwritten notation stating: "The practice was more enjoyable before feminazi bitches like you came on the scene."

On June 6, 2005, respondent sent a letter to the Counsel for Discipline regarding the disciplinary hearing in case No. S-04-1399. The letter stated: "People who know more about your outfit inform me Frobish is your hitman." It also stated: "Your rules suck in situations like this. I didn't try to screw her or steal her money. The letter I wrote to her disgusting husband had to be written and [J.N.] needed a coupleof [sic] beers on occasion to balance her wacky head." On July 14, relator notified respondent that it had filed a grievance against him regarding his conduct in sending the aforementioned letters. Respondent answered with a letter dated July 26, 2005, in which he stated:

> You and your people, Frobish, [referee], [attorney] what's her name and the Chief [of the Nebraska Supreme Court] have succeeded in ruining my livelihood, my reputation, my dignity and, finally, my health.
>
> I suffered a stroke a few days ago the proximate cause of which is the bull shit case filed against me by your office.
>
> All I have wanted out of life the past few years is to watch my grandchildren grow up. Now, thanks to you pricks, that wish will likely be denied me.
>
> I have several pissed off friends who are meaner than junk-yard dogs and have good memories.

All this over a crazy, alcoholic, drug addict who will never have a normal life.

On December 26, 2005, respondent sent a letter to the referee appointed to hear the proceedings in case No. S-05-1116 and the relator. The letter generally criticized the state of the legal profession and specifically criticized the disciplinary process. The letter concluded: "Do to me what you will. I submit on the pleadings and waive oral argument. The aforementioned should be submitted to the chief. This, likely, is only the beginning."

## STANDARD OF REVIEW

■ A proceeding to discipline an attorney is a trial de novo on the record. *State ex rel. Counsel for Dis. v. Jones*, 270 Neb. 471, 704 N.W.2d 216 (2005); *State ex rel. Counsel for Dis. v. Chapin*, 270 Neb. 56, 699 N.W.2d 359 (2005). However, because neither party has taken exception to the findings of the referees in these cases, our task is limited to a determination of appropriate discipline. See *State ex rel. Counsel for Dis. v. Janousek*, 267 Neb. 328, 674 N.W.2d 464 (2004).

## ANALYSIS

■ When neither party files written exceptions to the referee's report, the Nebraska Supreme Court may consider the referee's findings final and conclusive. See *State ex rel. Counsel for Dis. v. Kleveland*, 270 Neb. 52, 703 N.W.2d 244 (2005). Based upon the findings in the referees' reports, which we consider to be final and conclusive, we conclude the formal charges in both cases are supported by clear and convincing evidence.

■ Under Neb. Ct. R. of Discipline 4 (rev. 2004), this court may impose one or more of the following sanctions: (1) disbarment, (2) suspension, (3) probation in lieu of or subsequent to suspension, (4) censure and reprimand, or (5) temporary suspension. *State ex rel. Counsel for Dis. v. Jones, supra*. To determine whether and to what extent discipline should be imposed in a lawyer discipline proceeding, the Nebraska Supreme Court considers the following factors: (1) the nature of the offense, (2) the need for deterring others, (3) the maintenance and reputation of the bar as a whole, (4) the protection of the public, (5) the attitude of the respondent generally, and (6) the respondent's

present or future fitness to continue in the practice of law. *Id.*; *State ex rel. Counsel for Dis. v. Sutton,* 269 Neb. 640, 694 N.W.2d 647 (2005). Each attorney discipline case must be evaluated individually in light of its particular facts and circumstances. *State ex rel. Counsel for Dis. v. Widtfeldt,* 269 Neb. 289, 691 N.W.2d 531 (2005); *State ex rel. Counsel for Dis. v. Janousek, supra.* In addition, the propriety of a sanction must be considered with reference to the sanctions imposed in prior similar cases. *Id.* To determine the proper discipline of an attorney, this court considers the attorney's acts both underlying the events of the case and throughout the disciplinary proceeding. *State ex rel. Counsel for Dis. v. Widtfeldt, supra; State ex rel. Counsel for Dis. v. Thompson,* 264 Neb. 831, 652 N.W.2d 593 (2002).

While these cases do not involve theft or misappropriation of client funds, the misconduct is nevertheless very serious in nature. The referee in case No. S-04-1399 specifically found that respondent's client, J.N., "was a drug addicted, psychologically impaired woman in need of legal and personal help." She retained respondent to represent her with respect to a probation revocation case. Before she finally discharged him as her lawyer, respondent accompanied her to bars and purchased alcoholic beverages for her, in violation of the terms of her probation; urged her estranged husband to commit suicide; and directed her to sign a divorce petition which he had drafted without being requested to do so. When disciplinary charges were filed against him, respondent directed his verbal fury at the Counsel for Discipline, court-appointed referees, the attorney representing J.N., the bar association, and this court. Some of his letters disclosed confidential information about J.N. to persons having no association with these proceedings. Hostile, threatening, and disruptive conduct reflects on an attorney's honesty, trustworthiness, diligence, and reliability and adversely reflects on one's fitness to practice law. *State ex rel. Counsel for Dis. v. Janousek,* 267 Neb. 328, 674 N.W.2d 464 (2004); *State ex rel. Counsel for Dis. v. Lopez Wilson,* 262 Neb. 653, 634 N.W.2d 467 (2001). An attorney's conduct which includes progressively abusive language, demeanor, and threats violates disciplinary rules that prohibit engaging in conduct prejudicial to the administration of justice and engaging in conduct that

adversely reflects on one's fitness to practice law. *State ex rel. Counsel for Dis. v. Lopez Wilson, supra.*

■ Cumulative acts of attorney misconduct are distinguishable from isolated incidents and are therefore deserving of more serious sanctions. *State ex rel. Counsel for Dis. v. Janousek, supra*; *State ex rel. Counsel for Dis. v. Cannon*, 266 Neb. 507, 666 N.W.2d 734 (2003). The records in these two cases reflect numerous acts of hostile, threatening, and disruptive conduct which is similar in nature to that for which respondent was previously disciplined. His 1991 private reprimand resulted from a letter he wrote to a female attorney then representing his former client in which he referred to the client as a "crazy bitch" and closed with an even more crude and degrading remark about women. Respondent's 1996 private reprimand resulted from his verbal harassment of a female client who had terminated his services. We agree with the determination of the referee in case No. S-05-1116 that "[r]espondent's implied threat of vigilante justice administered by his [angry] friends clearly demonstrates complete and total disrespect for the rule of law and those that administer the law." In light of this pattern of highly unprofessional conduct marked by a "serial disregard for our disciplinary rules," a significant sanction is necessary to maintain the reputation of the bar as a whole, deter others from similar conduct, and protect the public. See *State ex rel. Counsel for Dis. v. Janousek*, 267 Neb. at 338, 674 N.W.2d at 473.

Respondent's attitude in light of the evidence does little to warrant leniency. As noted by the referee in case No. S-05-1116, respondent has failed "to acknowledge that any of his conduct is outside the bounds of conduct governed by the Code, let alone outside the bounds of human decency." In his final communication with the referee, respondent stated: "The status of my license means nothing in the big picture. You and all those involved in kangaroo proceedings of this nature mean absolutely nothing in the big picture." In mitigation, respondent asserted at various times in the proceedings that he had suffered a stroke soon after receiving the referee's report in case No. S-04-1399 and that his actions thereafter were affected by this medical condition. However, respondent presented no medical evidence to substantiate this claim.

In other cases involving a pattern of abusive conduct by an attorney, we have imposed severe sanctions. *State ex rel. Nebraska State Bar Assn. v. Michaelis*, 210 Neb. 545, 316 N.W.2d 46 (1982), involved a lawyer who made repeated unsubstantiated derogatory statements about other attorneys during a political campaign. After disciplinary charges were filed, he filed documents in which he "continue[d] to vilify certain attorneys, the bar generally, and the Nebraska Supreme Court." *Id.* at 561, 316 N.W.2d at 55. Noting that the attorney demonstrated "no remorse, change in attitude, or desire to cease his scurrilous attacks upon the bar and bench of this state," we concluded that the pattern of conduct demonstrated a lack of fitness to practice law and entered a judgment of disbarment. *Id.* at 562, 316 N.W.2d at 56.

In *State ex rel. Counsel for Dis. v. Janousek*, 267 Neb. 328, 674 N.W.2d 464 (2004), a lawyer engaged in a pattern of harassment directed at a former client with whom he had had a personal relationship which ended. The conduct included degrading and threatening letters written to the former client and the attorney then representing her. One of the letters was "composed entirely of degrading, vile racism and obscenity." *Id.* at 337, 674 N.W.2d at 472. Determining that the lawyer's conduct constituted a "deliberate campaign to discredit the complainant, deprive her of legal counsel, interrupt her education, and terrorize her," we concluded that the lawyer's conduct was "not only disgraceful, but shows disrespect for the law, the legal profession, the legal process, the authority of the courts, and basic principles of justice, fairness, and human dignity." *Id.* at 336-37, 338, 674 N.W.2d at 472, 473. The lawyer had three prior disciplinary reprimands for dissimilar conduct. We entered a judgment of disbarment.

The evidence in these cases, considered in conjunction with the two prior reprimands for similar misconduct, leads to the conclusion that respondent is presently unfit to practice law. In the absence of any persuasive mitigating factors, or any acknowledgment by respondent that his conduct in these cases deviates from ethical standards to which attorneys are held, we conclude that disbarment is the appropriate sanction.

## CONCLUSION

There is clear and convincing evidence in case No. S-04-1399 that respondent violated DR 1-102(A)(5) by engaging in conduct prejudicial to the administration of justice and that he violated DR 1-102(A)(6) by engaging in other conduct that adversely reflects on his fitness to practice law. Likewise, there is clear and convincing evidence in case No. S-05-1116 that respondent violated DR 1-102(A)(5) and (6) by engaging in additional conduct prejudicial to the administration of justice and reflecting adversely on his fitness to practice law. There is also clear and convincing evidence in case No. S-05-1116 that respondent violated DR 4-101(B)(1) by revealing confidences and secrets of a client without justification. It is therefore the judgment of this court that respondent, Robert H. Beach, is disbarred from the practice of law in the State of Nebraska, effective immediately. Respondent is directed to comply with Neb. Ct. R. of Discipline 16 (rev. 2004), and upon failure to do so, he shall be subject to punishment for contempt of this court. Respondent is further directed to pay costs and expenses in accordance with Neb. Rev. Stat. §§ 7-114 and 7-115 (Reissue 1997) and Neb. Ct. R. of Discipline 10(P) (rev. 2005) and 23 (rev. 2001) within 60 days after an order imposing costs and expenses, if any, is entered by this court.

JUDGMENT OF DISBARMENT.

HENDRY, C.J., participating on briefs in No. S-05-1116.